PEOPLE v LONG

Docket No. 78-3810. Submitted October 2, 1979, at Grand Rapids.—
Decided December 18, 1979. Leave to appeal applied for.

David K. Long was convicted of possession of marijuana, Barry
Circuit Court, Hudson E. Deming, J. Defendant had filed a
pretrial motion to suppress the marijuana confiscated by law
enforcement officers from the interior and trunk of his automo-
bile. Judge Deming had denied that motion. Defendant appeals.
On appeal defendant contends that the marijuana should not
have been admitted into evidence because it was obtained as
the result of an unconstitutional search and seizure. *Held:*

1. The discovery and seizure of a small plastic bag of mari-
juana under the front seat armrest of defendant's automobile
did not violate the Fourth Amendment protection against
unreasonable searches and seizures. A precautionary lifting of
the armrest and seizure of the small plastic bag was constitu-
tionally valid as a reasonable protective search without a
warrant under the totality of the facts and circumstances
existing at the time of the seizure.

2. An inventory search of a lawfully impounded automobile
without a search warrant does not violate the Fourth Amend-
ment which provides protection from unreasonable searches
and seizures where standard police procedures are followed, the
procedure was not a pretext concealing an investigatory police
motive and the inventory was not unreasonable in scope.
Defendant, the sole occupant of the automobile, had been
arrested for possession of marijuana and was to be transported

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures §§ 2, 5.

[2] 68 Am Jur 2d, Searches and Seizures §§ 57, 58.

[3] 68 Am Jur 2d, Searches and Seizures § 57.
Lawfulness of "inventory search" of motor vehicle impounded by
search. 48 ALR3d 537.
Validity, under Federal Constitution, of warrantless search of auto-
mobile—Supreme Court cases. 26 L Ed 2d 893.

[4] 68 Am Jur 2d, Searches and Seizures §§ 57, 106.

[5] 4 Am Jur 2d, Appeal and Error § 166.

to jail. The car he was driving was in a ditch with the rear portion partially blocking the public roadway and the lock had been punched out of the vehicle's trunk and the trunk's contents were accessible to anyone who might happen along in the early hours of the morning with the inclination to trip the latch on the trunk. A police officer used his pocket knife to unlatch the trunk. He observed two large paper bags, each of which was split open and contained marijuana. Impoundment of the automobile and an on-the-scene inventory search was clearly reasonable under these circumstances. Inspection of the vehicle's trunk was motivated by a belief that discovery of the plastic bag of marijuana inside the car suggested the possibility of additional marijuana in the trunk. Furthermore, the car and its contents needed protection. These two concurrent theories of justification for inspection of the trunk do not indicate that the inventory basis for the search was a mere pretext. The trial judge's determination that the policeman's inspection of the trunk was made pursuant to a proper inventory is not clearly erroneous.

Affirmed.

1. SEARCHES AND SEIZURES — INVASION OF PRIVACY — REASONABLENESS OF INVASION — CONSTITUTIONAL LAW.

A Fourth Amendment analysis of whether a search and seizure is valid always depends upon the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security (US Const, Am IV).

2. SEARCHES AND SEIZURES — AUTOMOBILES — DRUGS AND NARCOTICS — MOTION TO SUPPRESS — REASONABLE PROTECTIVE SEARCHES.

A defendant's pretrial motion to suppress marijuana that was discovered and seized from his automobile by the police without a warrant was properly denied where under the totality of circumstances the seizure was the result of a reasonable protective search.

3. SEARCHES AND SEIZURES — AUTOMOBILES — IMPOUNDED AUTOMOBILES — INVENTORY SEARCH — SEARCH PROCEDURES — REASONABLENESS — CONSTITUTIONAL LAW.

An inventory search of a lawfully impounded automobile without a search warrant does not violate the Fourth Amendment where standard police procedures are followed, the procedure is not a pretext concealing an investigatory police motive and the search is not unreasonable in scope (US Const, Am IV).

4. SEARCHES AND SEIZURES — AUTOMOBILES — LAWFUL POLICE CUS-
TODY — ON-THE-SCENE SEARCH — INVENTORY SEARCH — CON-
STITUTIONAL LAW.

An on-the-scene inventory search of an automobile is valid under
the Fourth Amendment where the automobile is in lawful
police custody and the process is aimed at securing or protect-
ing the vehicle and its contents (US Const, Am IV).

5. APPEAL AND ERROR — CRIMINAL LAW — SUPPRESSION OF EVIDENCE
— CLEARLY ERRONEOUS RULINGS.

The Court of Appeals will not overturn a ruling of a trial court at
a hearing on a motion to suppress evidence unless that ruling
is found to be clearly erroneous.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *James H. Fisher,*
Prosecuting Attorney, (by *Leonard J. Malinowski,*
Assistant Attorney General, Prosecuting Attorneys
Appellate Service), for the people.

*Jerkins, Plaszczak, Hurley & Bauhof,* for defendant.

Before: CYNAR, P.J., and D. F. WALSH and L. B.
BEBEAU,* JJ.

L. B. BEBEAU, J. Defendant, on August 29, 1978,
was convicted by jury of possession of marijuana,
contrary to MCL 335.341(4)(d); MSA
18.1070(41)(4)(d). He appeals of right from his con-
viction and September 15, 1978, sentence of two
years probation, a fine of $750, and court costs of
$300.

Defendant first contends that marijuana confis-
cated by law enforcement officers from the interior
and the trunk of the automobile he was driving
was obtained by an unconstitutional search. The
trial court, relying upon the testimony contained

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

in the preliminary examination transcript, denied defendant's pretrial motion to suppress the marijuana evidence, and again denied defendant's motion when it was renewed at trial. Because of the close question presented by the case at bar, and because search and seizure questions such as this one are invariably factually oriented, it is necessary to review in some detail the events which culminated in police seizure of marijuana from defendant's vehicle, as these events are depicted in the preliminary examination transcript upon which the trial judge relied in denying defendant's motion to suppress.

At approximately 12:05 a.m. on August 25, 1977, deputies Howell and Lewis of the Barry County Sheriff's Department, while on routine patrol, observed a car pass them traveling in the opposite direction, and measured the speed of this vehicle at 71 miles per hour in a 55-mile-per-hour zone. By the time the deputies had turned their vehicle around and driven a short distance they came upon the sought-for automobile with its front end in the ditch and its rear end protruding onto the road. As deputies Howell and Lewis left their vehicle and walked forward, defendant—the driver and sole occupant of the other car—left from the driver's seat side, leaving the driver's door open and the dome light on, and met the deputies at the trunk area of his automobile.

Defendant, after failing to respond to the deputies' initial request for his driver's license, produced it following their second request. When asked for his proof of insurance and vehicle registration defendant again made no response and, subsequent to the deputies' second request, began walking toward his open car door. At this juncture Deputy Howell observed a "large folding knife"

lying on the front floor of the vehicle and ordered defendant to halt. While Lewis retrieved the knife, Howell conducted a pat-down search of defendant which revealed no weapons on defendant's person. Deputy Howell then shined his flashlight into the front seat of defendant's car "looking for another weapon". After noticing some object which appeared to be leather protruding from under the center frontseat armrest closest to the driver's side of the automobile, Howell reached in, lifted the armrest, and observed an open leather pouch containing a small plastic bag which appeared to the deputy to contain marijuana.

After removing the pouch from the vehicle and showing it to Deputy Lewis, Howell placed defendant under arrest for possession of marijuana, searched the vehicle for additional contraband, searched the glove compartment in vain for the automobile's registration certificate, decided the car would have to be impounded, and thereupon asked defendant if he had a trunk key, to which defendant responded negatively. At the preliminary examination, Deputy Howell testified as follows regarding what then transpired:

"A * * * My intention at the time when I got out of the vehicle and I asked him for the keys I knew we would have to have the keys to remove the vehicle. The steering column locks and locked ignition, steering and transmission. After receiving the key from him I walked to the rear of the vehicle and noticed that the trunk lock had been punched out. At this time I took my pocket knife and reached in and unlatched the latch.

"Q Why did you do that?

"A It was unusual circumstances to me. Also we check the vehicle to make sure there's nothing, you know, that's valuable.

"Q And you do that in limited circumstances where there is no other person to drive the vehicle away?

"A Yes sir.

"Q Is that standard policy?

"A It's my policy, yes.

"THE COURT: What's your policy? * * *.

"MR. HOWELL: Yes sir, we don't—I think what the Prosecutor is getting at is an inventory search. We do not have an inventory search.

"THE COURT: Alright so you opened the trunk?

"MR. HOWELL: Personally, well I can't speak for the other officers, myself I check the vehicle to make sure there's nothing of value in there that can be later claimed—

"THE COURT: Alright, fine, but why did you open the trunk?

"MR. HOWELL: Number one, because I already found marijuana, suspected marijuana in the interior of the car, there may have been more in the trunk. Secondly I check them for valuables. I do."

Upon opening the trunk Deputy Howell observed two large paper bags, each of which was split open to reveal its contents to Howell as marijuana. It was testified at trial that the total weight of both bags was between 70 and 75 pounds. Defense counsel at trial introduced into evidence a certificate of title and a copy of an application for certificate of title, as well as an application for 1977 license plates, all relating to the automobile which defendant was driving at the time in question, and all of which showed title to the car in a person other than defendant.

Because evidence of both the small plastic bag of marijuana found inside the car and the large volume of marijuana confiscated from the vehicle's trunk was introduced at defendant's trial, and because evidence of marijuana from both these sources is inextricably intertwined as a basis for

the jury's undifferentiated verdict finding defendant guilty of possession of marijuana, we deem it necessary to analyze *seriatim* defendant's properly preserved objections to the admissibility of each portion of marijuana.

I.

As is conceded by the parties and verified by a careful examination of the instant record, the constitutionality of Deputy Howell's discovery and seizure of the small plastic bag of marijuana under the frontseat armrest depends upon the proper analysis of the instant facts in light of the legal principles enunciated by the United States Supreme Court in *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). The salient question presented for our resolution is whether, under the unique facts and circumstances of the present case, Deputy Howell's precautionary lifting of the front seat armrest prior to allowing defendant to reenter his automobile was constitutionally valid as a protective search under the *Terry* doctrine. We answer this question in the affirmative and therefore affirm the trial judge's denial of defendant's motion to suppress the small plastic bag of marijuana.

In the case at bar, sheriff's deputies confronted defendant in the early hours of the morning after he emerged from his ditched vehicle shortly after having passed the deputies at a clocked speed of 71 miles per hour. Defendant had to be asked twice to produce his driver's license before he did so. Likewise, it was not until the deputies' second request for his automobile registration and proof of insurance that defendant turned and began walking toward the open door of his vehicle. Defendant's conduct at the scene created the impression in

Deputy Howell's mind that defendant "appeared to be under the influence of something".

Rendering the situation more ominous was the deputies' discovery of a large folded knife on the floor in the driver's area of the vehicle. Although a pat-down search of defendant revealed him to be free of weapons, that finding does not answer the critical question involved in this case. Implicit in defendant's turning and walking toward the driver's seat of his vehicle was the logical inference that it was his intent to reenter the driver's seat to obtain the papers requested by deputies Howell and Lewis. A large folded knife had just been recovered from the floor of the driver's area, and some type of leather-like object was noted partially protruding from under an armrest in that same vicinity. Under such facts we do not believe that the deputies were constitutionally required to allow defendant access to the driver's seat of his automobile without first taking the protective precaution of lifting the nearby armrest to ensure that no weapon was readily available there to defendant's grasp. Deputy Howell testified at the preliminary examination that if he had not found anything he would have asked defendant to get the registration. There is no evidence of a full-scale search of the automobile's interior conducted by sheriff's deputies at this point in time. Rather, the carefully circumscribed intrusion engaged in by Deputy Howell was within the ambit of the *Terry* doctrine.

In *People v Ridgeway,* 74 Mich App 306; 253 NW2d 743 (1977), the passenger of a stopped automobile, while standing outside the vehicle, indicated to police officers that his identification was in a closed purse inside the car. One officer removed the purse from the automobile, opened it

before giving it to the passenger because the officer did not know what was in it, and discovered a pistol. In approving the search of the purse and seizure of the weapon, this Court stated:

"[W]ithout reference to the arrest, we would hold that the gun was discovered during a protective frisk as approved by *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968). A possible objection to either holding would be that the gun was inside the car and thus not within the defendant's immediate reach. But the officers still had not seen the defendant's identification. Whether viewed as incident to an arrest or as part of a continuing on-the-scene investigation of suspicious conduct, someone was going to open the purse and produce the identification. Given the circumstances of this case, we do not believe that the officers were required to allow the defendant access to the purse without first checking the contents. A number of Federal decisions involving similar circumstances support our conclusion. *United States v Murrie,* 534 F2d 695 (CA 6, 1976), *United States v Poms,* 484 F2d 919 (CA 4, 1973), *United States v Beasley,* 479 F2d 1124 (CA 5, 1973), and *United States v Vigo,* 487 F2d 295 (CA 2, 1973)." 74 Mich App at 314-315.

See also *People v White,* 84 Mich App 351; 269 NW2d 598 (1978). *People v Rosales,* 406 Mich 624; 281 NW2d 126 (1979), and *Government of the Canal Zone v Bender,* 573 F2d 1329 (CA 5, 1978), relied upon by defendant, are factually distinguishable since in neither case was the search sought to be justified under *Terry* conducted pursuant to a bona fide need to protect police officers from physical danger or fear of violence during their investigation.

We adopt the *Ridgeway* rationale as applicable to the instant facts. "The touchstone of our analysis under the Fourth Amendment is always the 'reasonableness in all the circumstances of the

particular governmental invasion of a citizen's personal security.' *Terry v Ohio,* 392 US 1, 19; 88 S Ct 1868; 20 L Ed 2d 889 (1968)". *Pennsylvania v Mimms,* 434 US 106, 108-109; 98 S Ct 330; 54 L Ed 2d 331 (1977). Under the totality of the facts and circumstances existing in the case at bar, Deputy Howell's lifting of the armrest constituted a reasonable protective search under *Terry.* The trial judge therefore correctly denied defendant's motion to suppress the marijuana discovered under the armrest.

## II.

We turn next to a determination of whether Deputy Howell's inspection of the trunk of the stopped vehicle was constitutionally justifiable as an inventory search. In *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the United States Supreme Court held that US Const, Am IV is not violated by a warrantless inventory search, following standard procedures, of a lawfully impounded automobile, where the procedure was not a pretext concealing an investigatory police motive, and the inventory was not unreasonable in scope. See also *People v Boutell,* 80 Mich App 216; 263 NW2d 36 (1977).

There is no question in this case but that the deputies' decision to impound defendant's vehicle was proper. Defendant, the sole occupant of the automobile, had been arrested for possession of marijuana and was to be transported to jail. The car he was driving was in the ditch, with the rear portion partially blocking the public roadway. Moreover, since the lock had been punched out of the vehicle's trunk, the trunk's contents were accessible to anyone who might happen along in the early hours of the morning with the inclina-

tion to trip the latch on the trunk. Impoundment of the vehicle was therefore clearly reasonable. *People v Roberson,* 80 Mich App 241; 263 NW2d 42 (1977).

Nor do we deem controlling the fact that the trunk search occurred at the scene of the stop instead of at the impoundment lot. The testimony in this case is clear that the decision to impound had been made prior to the trunk search, although a wrecker was not summoned to tow the vehicle away until after the trunk was inspected by Deputy Howell. The Court in *Opperman, supra* at 373 declared:

"In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded *or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents."* (Emphasis supplied.)

See also *People v Roberson, supra,* which sustained an on-the-scene inventory search.

Deputy Howell testified that his inspection of the vehicle's trunk was motivated by a belief that discovery of the plastic bag of marijuana inside the car suggested the possibility of additional marijuana in the trunk, and because it was his policy to check for valuables to protect himself against subsequent claims by the vehicle's owner. It is well known that a given police action may be supportable on more than one legal ground. See *People v Roberson, supra* at 242-243; *People v Ridgeway, supar* at 314-315. The fact that Deputy Howell believed that his inspection of the trunk was justifiable on two separate grounds does not compel the conclusion that his second articulated ground was a mere pretext for the accomplishment of a search

actually conducted pursuant to some other motive. Since the issue was neither briefed nor argued in the present case, we express no opinion as to the legal validity of Howell's belief that he could search the entire car, including the trunk, based upon the finding of the small bag of marijuana under the armrest. We note, however, that the legal questions inherent in this theory are sufficiently complex to have recently necessitated the attention of the highest court of a sister state. *Wimberly v Superior Court of San Bernardino County,* 16 Cal 3d 557; 128 Cal Rptr 641; 547 P2d 417 (1976). Deputy Howell's expressed entertainment of two concurrent theories of justification for his inspection of the trunk does not indicate that the inventory basis for the search was a mere pretext.

During his preliminary examination testimony, Deputy Howell stated that "[w]e do not have an inventory search". Howell averred, however, that it was his policy to check a vehicle in an impoundment situation to guard against later claims.

One prerequisite to a valid inventory search recognized by the *Opperman* court is that the search must be conducted pursuant to a standard police procedure. That the trial judge properly considered any inconsistencies in the deputies' testimony regarding this element is clearly demonstrated by his ruling denying defendant's motion to suppress:

"The District Judge held that the intrusion into the trunk constituted an inventory search and such was permissible. From my review of the testimony of the officers, and there was testimony to the effect that the examination of the trunk was made for the purpose of determining what valuables were contained in this automobile, and the officers didn't use the chosen words

of inventory, but I'm satisfied when the officers said that they're concerned about valuables, that they meant inventory. I'm satisfied that that's why the trunk was opened."

The ruling of the trial court denying defendant's motion to suppress will be reversed on appeal only if it is clearly erroneous. *People v Terrell,* 77 Mich App 676; 259 NW2d 187 (1977). Utilizing that standard, we find no reversible error in the trial judge's determination that the deputies' inspection of the trunk was made pursuant to a proper inventory of the type approved by *Opperman* and its progeny.

Defendant's remaining allegations of error are without merit.

Affirmed.