PEOPLE v McINTOSH

Docket No. 51227. Submitted October 20, 1980, at Detroit.—Decided
    October 6, 1981.

Mark W. McIntosh was charged in Lenawee Circuit Court with
    receiving and concealing stolen property. He filed a motion to
    suppress the evidence on the ground that the evidence was
    discovered during an invalid inventory search of his automo-
    bile. The motion was denied. Defendant then pled guilty after
    specifically reserving his right to challenge on appeal the
    court's denial of his motion to suppress the evidence. The plea
    was accepted and defendant was sentenced, Rex B. Martin, J.
    Defendant appeals. *Held:*

    1. There was no abuse of discretion in the trial court's denial
    of defendant's motion to suppress. The vehicle was legally
    impounded following defendant's arrest and the facts of the
    case show only a police motive to record and protect the
    contents of the legally impounded vehicle.

    2. The use of routine police inventory searches of legally
    impounded vehicles, where such procedures are designed to
    protect defendants and police from claims of lost or stolen
    property or personal injury and where the search is not in-
    tended to conceal other investigatory motives, does not violate
    a defendant's Fourth Amendment right to be free from unrea-
    sonable searches and seizures.

    Affirmed.

    DANHOF, C.J., dissented. He would hold that defendant's
    qualified plea agreement was not valid and enforceable because
    a plea of guilty bars a defendant from subsequently raising a
    nonjurisdictional challenge to the proceedings. He would set
    defendant's plea aside and remand for the taking of an unquali-
    fied plea, or for trial, in the parties' option.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 4 Am Jur 2d, Appeal and Error § 166.

[2] 68 Am Jur 2d, Searches and Seizures §§ 57, 106.
    Lawfulness of "inventory search" of motor vehicle impounded by
    police. 48 ALR3d 537.

[3] 4 Am Jur 2d, Appeal and Error § 271.
    21 Am Jur 2d, Criminal Law § 490.

Opinion of the Court

1. APPEAL — CRIMINAL LAW — EVIDENCE — SUPPRESSION OF EVI-
DENCE.

A trial court's decision at a hearing on a motion to suppress
evidence will not be overturned absent an abuse of discretion.

2. SEARCHES AND SEIZURES — AUTOMOBILES — IMPOUNDED AUTOMO-
BILES — INVENTORY SEARCHES — CONSTITUTIONAL LAW.

An inventory search of a lawfully impounded automobile without
a search warrant does not violate the Fourth Amendment right
to be free from unreasonable searches and seizures where
standard police procedures designed to protect defendants and
police from claims of lost or stolen property and personal
injury are followed and where the search is not intended to
conceal other investigatory motives (US Const, Am IV).

DISSENT BY DANHOF, C.J.

3. CRIMINAL LAW — GUILTY PLEAS — APPEAL.

A plea of guilty bars a defendant from subsequently raising
nonjurisdictional challenges to the proceedings; therefore a plea
agreement whereby a defendant pleads guilty only on the
condition that he may appeal the trial court's denial of his
motion to suppress evidence is not valid and enforceable.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Harvey A. Koselka,* Prosecuting Attorney, and *Thomas C. Nelson,* Assistant Attorney General, for the people.

*William A. Benz,* for defendant on appeal.

Before: DANHOF, C.J., and M. J. KELLY and D. L. SULLIVAN,* JJ.

M. J. KELLY, J. Defendant, Mark W. McIntosh, appeals as of right from his plea-based conviction for receiving and concealing stolen property, MCL 750.535; MSA 28.803. On appeal, defendant contests as error the trial court's denial of his motion to suppress a stolen Nikon camera which was

---

* Circuit judge, sitting on the Court of Appeals by assignment.

discovered during an allegedly invalid inventory search of defendant's automobile.

The people's appellate brief acknowledges that at the time he pled guilty, "[d]efendant specifically reserved his right to challenge on appeal the court's ruling on his motion to suppress". The people acquiesced in this procedure below and do so on appeal. We treat the issue on the merits for the reasons outlined in Judge CAVANAGH's majority opinion in *People v Ricky Smith,* 85 Mich App 32; 270 NW2d 697 (1978).

On the night of December 7, 1979, two officers of the Adrian Police Department, acting pursuant to an informant's tip, positioned themselves across the street from a gas station in expectation of an attempted burglary. At approximately 2:30 a.m., the officers observed a light-colored vehicle stop in front of the station, discharge a passenger and proceed to a stop in the St. Stevens Church parking lot located nearby. As the passenger attempted to gain entry to the station, one of the officers arrested him. The second officer (Officer Gary Lindsay) went to the lot where defendant was seated in his car, directed the defendant to get out of the car and placed him under arrest.

Testimony recorded at a hearing on a motion to suppress regarding subsequent events was conflicting. Officer Lindsay testified to having conducted an external search of defendant's car by use of a flashlight. He said that during the search he noticed a multicolored strap protruding from under the front seat of defendant's car. Lindsay could not recall whether he pulled on the strap and thus discovered the camera or looked under the seat to find it.

A third officer, Lawrence Ost, testified that Officer Lindsay did not enter or search defendant's

vehicle. Deputy Ost stated that, upon looking into defendant's car, he noticed part of a telephoto lens. Ost then opened the car door, removed the camera and recorded the camera's identification number. Before towing the vehicle to storage, Officer Joseph Nino conducted an inventory search of its contents. Nino did not record the camera's serial number on his inventory sheet but did note the finding of a "Nikon" camera. The camera was left in the vehicle.

The following day, officers compared the camera's serial number against those on a stolen property list maintained by the department. It was discovered that the serial number of the camera found in defendant's car matched a number on the list of items stolen from a local camera shop. Based upon this comparison, an affidavit was prepared and search warrant obtained, which led to seizure of the camera and the subsequent filing of a charge of receiving and concealing stolen property against defendant.

Defendant presents four arguments contending invalidity of the inventory search. Due to their similarity, we consolidate the four allegations into one issue: whether defendant's Fourth Amendment right to be free from unreasonable searches and seizures was violated by the inventory search conducted after his arrest. Before proceeding to the substance of defendant's claim, we note the applicable standard of appellate review: Absent an abuse of discretion, a trial court's decision at a suppression hearing will not be overturned. *People v Erskin,* 92 Mich App 630, 642; 285 NW2d 396 (1979), citing *People v Young,* 89 Mich App 753; 282 NW2d 211 (1979).

In *South Dakota v Opperman,* 428 US 364; 96 S Ct 3092; 49 L Ed 2d 1000 (1976), the Supreme

Court upheld the use of routine police inventory searches where such procedures are designed to protect defendants and police from claims of lost or stolen property or personal injury, and where the search is not intended to conceal other investigatory motives. See also *Cady v Dombrowski,* 413 US 433; 93 S Ct 2523; 37 L Ed 2d 706 (1973), and *People v Long,* 94 Mich App 338, 347; 288 NW2d 629 (1979), *lv gtd* 409 Mich 869 (1980). The authority to conduct such an inventory search was predicated in large part on the normal community caretaking functions performed by police:

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' *Cady v Dombrowski, supra,* at 441 automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." (Footnote omitted.) *Opperman, supra,* 368-369.

See also *People v Erskin, supra,* upholding the inventory search of an automobile abandoned by its driver after being stopped by police, and *People v Boutell,* 80 Mich App 216; 263 NW2d 36 (1977), finding valid an inventory search of a vehicle which produced a pistol found under the driver's seat. In *Boutell,* the Court held the impoundment and search of defendant's car justified where an

accumulation of snow prevented the vehicle from being parked on the side of the road. But see *People v Siegel*, 95 Mich App 594, 605; 291 NW2d 134 (1980), *lv held in abeyance* 409 Mich 869 (1980), finding improper the inventory search of an automobile found in a private driveway adjacent to a house allegedly owned by the defendant.

The instant case does not fall precisely within any of the precedents hereinbefore noted. Defendant's automobile was not in a position to impede the orderly flow of vehicular traffic, *South Dakota v Opperman, supra, People v Long, supra,* nor was it on property under the defendant's control. *People v Siegel, supra.* Nonetheless, we find that the police acted within their authority in impounding the disputed automobile.

The facts herein do not differ substantially from those of *United States v Staller,* 616 F2d 1284 (CA 5, 1980). In *Staller,* the defendant and a companion were arrested in a shopping mall after several reported incidents of store clerks receiving counterfeit $20 bills. Following the arrests, local police conducted an inventory search of the defendants' automobile prior to having it towed from an adjacent parking lot. The search disclosed additional bills which defendants sought to suppress as the fruits of an illegal search. The court noted several factors which made valid the inventory:

"In this case the automobile's owner, who was from out of state, had just been arrested for passing counterfeit money and taken to jail. The owner had no friend or relative available to take care of the car, as his only travelling companion had also been arrested. The officers who made the arrest had every reason to expect that appellants would be separated from their vehicle for an extended period of time. Although Saunders' vehicle was lawfully parked and presented no apparent hazard to public safety, the officers were aware that a

car parked overnight in a mall parking lot runs an appreciable risk of vandalism or theft. The likelihood of such harm would increase with every passing day. Under these circumstances taking custody of Saunders' car was a legitimate exercise of the arresting officer's community caretaking function. Once the officers took custody of the car, they were required by police department regulations to inventory its contents." *United States v Staller, supra,* 1289-1290. (Footnotes omitted.)

See also *United States v Ducker,* 491 F2d 1190 (CA 5, 1974).

A significant difference between *Staller* and the case at bar is the potential to shift custody of the vehicle to other persons, a factor entirely absent in the former decision. In this case, although the defendant's vehicle was not blocking a public thoroughfare, it was in an unattended private parking lot, its contents subject to a greater danger of theft or destruction than in *Siegel.* Unlike the situation in *Siegel* or *Staller,* the record below does not indicate whether defendant, if requested, could have made independent arrangements to secure the car. However, as in *Staller,* even a short period of inattention could have left defendant's vehicle open to theft or vandalism. Accepting as true the testimony of either Officer Lindsay or Officer Ost, the camera's strap or lens was visible from outside the car and could have offered an attractive incentive to potential thieves. See *South Dakota v Opperman, supra,* pp 375-376. ("The inventory itself was prompted by the presence in plain view of a number of valuables inside the car.") Presented with these factors at the time of defendant's arrest, impoundment was a reasonable alternative consistent with responsible police conduct.

The disputed inventory search, a normal police procedure, does not appear to have been a pretext

concealing police investigatory motives to obtain evidence of additional criminal acts. *South Dakota v Opperman, supra, Cady v Dombrowski, supra.* Also, even the most cursory search would have disclosed the stolen camera since it was located beneath the front seat and viewable in part from the outside of the car. The facts of the instant case exhibit only a police motive to record and protect the contents of a vehicle legally impounded. We thus find no abuse of discretion in the trial court's denial of defendant's motion to suppress.

Affirmed.

D. L. SULLIVAN, J., concurred.

DANHOF, C.J. *(dissenting).* For the reasons set forth in Judge BRONSON's opinion in *People v Ricky Smith,* 85 Mich App 32; 270 NW2d 697 (1978), I would hold that the qualified plea agreement involved herein is not valid and enforceable.

A plea of guilty bars a defendant from subsequently raising a nonjurisdictional challenge such as that involved in the instant case. See, *e.g., People v Riley,* 88 Mich App 727; 279 NW2d 303 (1979) (nolo plea), *People v Hill,* 86 Mich App 706; 273 NW2d 532 (1978) (nolo plea). See also *United States v Cox,* 464 F2d 937 (CA 6, 1972). Thus, the only way defendant could have preserved the search and seizure question addressed by the majority for appeal was by pleading not guilty and proceeding through trial.

Because the qualified plea agreement was not valid and enforceable, I would set defendant's plea aside and remand for the taking of an unqualified plea, or for trial, in the parties' option.