## PEOPLE v TAORMINA

Docket Nos. 65795, 66439. Submitted May 11, 1983, at Detroit.—
Decided October 25, 1983. Leave to appeal denied, 419 Mich —.

Samuel L. Taormina was convicted of possession, with intent to
deliver, of 650 grams or more of cocaine, Lapeer Circuit Court,
Norman A. Baguley, J. Prior to the trial the court denied
defendant's motion to suppress evidence seized from his home
and *sua sponte* set aside the defendant's conditional plea of
guilty and entered a not guilty plea for defendant. In sentenc-
ing defendant, the trial court found that the statutory penalty
for the offense was unconstitutional because the classification of
cocaine with narcotic drugs for penalty purposes was irrational
and a violation of equal protection. The court sentenced defen-
dant to a lesser sentence than that called for in the statute
under which the defendant was convicted. Defendant appealed,
alleging that the trial court erred in denying his motion to
suppress evidence and in *sua sponte* setting aside his condi-
tional plea. The people appealed from the trial court's ruling
regarding the penalty to be imposed. *Held:*

1. The evidence which defendant sought to suppress was
seized at his home pursuant to a search warrant obtained after
a plain-clothes officer, who had entered onto defendant's prop-
erty to obtain the license number of defendant's vehicle, was
invited into the house by defendant after the officer explained
his presence on the property by inquiring whether defendant
was the person who advertised wood stoves on a roadside sign.
The officer observed cocaine on a table in defendant's house.
Under the facts of this case, the defendant had no reasonable
expectation of privacy in either the license number of his
vehicle or in the area of his driveway where the officer ap-
proached the house. Furthermore, the entry into defendant's

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 68 Am Jur 2d, Searches and Seizures §§ 2 *et seq.,* 84 *et seq.*
[2, 5] 68 Am Jur 2d, Searches and Seizures §§ 16 *et seq.,* 23.
[3] 4 Am Jur 2d, Appeal and Error § 166.
    5 Am Jur 2d, Appeal and Error § 774.
[6] 21 Am Jur 2d, Criminal Law § 492 *et seq.*
[7]-25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 2, 17, 35.

house, at defendant's invitation, did not constitute an illegal search. The motion to suppress the evidence was properly denied.

2. The requirement of GCR 1963, 785.7(6)(b)(ii) that a trial court may *sua sponte* set aside a defendant's guilty plea only with the consent of the defendant applies only to accepted, unconditional pleas of guilty or nolo contendere. The court did not abuse its discretion in setting aside the conditional plea.

3. The penalty provisions of the controlled substance sections of the Public Health Code are not unconstitutional. The Legislature had a rational basis for classifying cocaine along with narcotic drugs for purposes of punishment for possession with intent to deliver. Such classification does not violate a defendant's due process or equal protection rights, and the trial court erred in holding the classification to be unconstitutional.

Affirmed in part, reversed in part, and remanded for resentencing.

1. SEARCHES AND SEIZURES — REASONABLE EXPECTATION OF PRIVACY.

A defendant must have a reasonable expectation of privacy in an area searched in order for the search to be in violation of the Fourth Amendment protection against unreasonable searches and seizures.

2. SEARCHES AND SEIZURES — REASONABLE EXPECTATION OF PRIVACY — TRESPASS.

There is no single factor which is determinative of an individual's reasonable expectation of privacy in determining whether an unreasonable search as prohibited by the Fourth Amendment has occurred, but among the factors to be considered are whether the area searched was within the curtilage of a residence or was open to view from a public area, whether the property searched was owned by the defendant or was in some way controlled by him, whether the defendant had a subjective expectation of privacy in the area searched, whether the area searched was enclosed, posted against trespass, or frequented by neighbors or strangers, and whether there were obstructions to viewing into the area.

3. EVIDENCE — SUPPRESSION OF EVIDENCE — APPEAL.

A trial court's decision on a motion to suppress evidence will be reversed only where the trial court abused its discretion or its decision was clearly erroneous.

4. SEARCHES AND SEIZURES — REASONABLE EXPECTATION OF PRIVACY.

An entry by an undercover police agent into a defendant's house

by the defendant's invitation is not illegal where the scope of the agent's visit is for the very purpose contemplated by the defendant.

5. SEARCHES AND SEIZURES — REASONABLE EXPECTATION OF PRIVACY.

What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection against unreasonable searches and seizures.

6. CRIMINAL LAW — GUILTY PLEAS — SETTING ASIDE PLEA — CONSENT OF DEFENDANT.

The requirement that a defendant must consent to the trial court's *sua sponte* setting aside of the defendant's guilty plea applies only to an accepted, unconditional plea of guilty or nolo contendere (GCR 1963, 785.7[6][b][ii]).

7. CONTROLLED SUBSTANCES — COCAINE — CONSTITUTIONAL LAW — CLASSIFICATION OF CONTROLLED SUBSTANCES.

The classification of cocaine along with addictive narcotics for purposes of punishment for the manufacture, delivery, or possession with intent to deliver of controlled substances does not violate the due process or equal protection rights of a defendant charged with possession of cocaine with intent to deliver (MCL 333.7401[2][a][i]; MSA 14.15[7401][2][a][i]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Nick O. Holowka,* Prosecuting Attorney, for the people.

*N. C. Deday LaRene,* for defendant on appeal.

Before: HOOD, P.J., and V. J. BRENNAN and D. S. DEWITT,* JJ.

PER CURIAM. The people charged defendant with possession, with intent to deliver, of 650 grams or more of a controlled substance, cocaine. MCL 333.7401, subds (1) and (2)(a)(i); MSA 14.15(7401), subds (1) and (2)(a)(i). Following a bench trial, the court found defendant guilty as charged. However, pursuant to the trial court's November 9, 1981, opinion that the penalty provision stated in MCL

* Circuit judge, sitting on the Court of Appeals by assignment.

333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) was unconstitutional because it is irrational and a denial of equal protection to classify cocaine as a narcotic drug for punishment purposes, the court instead sentenced defendant to four years and eight months to seven years in prison pursuant to MCL 333.7401(2)(b); MSA 14.15(7401)(2)(b).

Defendant appeals as of right (Docket No. 66439) the trial court's denial of his motion to suppress evidence seized from his home and the trial court's *sua sponte* setting aside of his conditional plea of guilty.

The people appeal as of right (Docket No. 65795) the trial court's ruling regarding the penalty provisions of the controlled substance provisions of the Public Health Code, MCL 333.7401 *et seq.;* MSA 14.15(7401) *et seq.*

The evidence at the hearing on defendant's motion to suppress showed that Michigan State Police Trooper Robert Bertee and Lapeer County Sheriff's Department Sergeant Thomas Fischhaber drove in plain clothes and an unmarked car to defendant's rural Lapeer County home based upon an informant's tip that defendant sold and used cocaine. The officers wished to obtain the license plate number on defendant's jeep, which was previously seen parked in defendant's driveway.

Defendant's driveway is long and circular. Defendant parked his jeep in front of his house about two-tenths of a mile from the public road. Halfway up the driveway was a rail fence that did not have gates or enclose defendant's property. Defendant did not post "no trespassing" signs on his property.

The officers pulled up into defendant's driveway to just behind defendant's jeep because they could not identify the vehicle's license number from the road even with the aid of binoculars or a telescope.

Trooper Bertee saw defendant look at the officers through a window and come to the front door. In order to avoid defendant's suspicion and also to observe defendant's appearance, Trooper Bertee went to defendant's door and knocked. Bertee had previously noticed defendant's neighbor advertise by a posted sign that he sold wood-burning stoves and firewood. When defendant answered his door, Bertee asked if he was the person selling wood stoves. Defendant answered negatively and pointed to his neighbor's house as the place where Bertee could purchase a wood-burning stove. Defendant and Trooper Bertee began to discuss fireplaces and stoves. Defendant told Bertee that he heated his home with two wood-burning fireplace stoves and invited Bertee into his home to look them over. Trooper Bertee first declined defendant's invitation but defendant told him it would be no bother for him to come in to see the stoves.

While following defendant through the kitchen, Trooper Bertee observed six clear plastic packets containing white powder on the kitchen table and a saucer containing white powder on a countertop. Bertee recognized the powder as cocaine.

When Trooper Bertee left defendant's residence some 10 to 15 minutes after defendant invited him inside, he and Sgt. Fischhaber visited defendant's wood stove-selling neighbor in order to avoid suspicion and then went to the Lapeer County Intelligence Unit's office to prepare a search warrant. A Lapeer County Circuit Court judge authorized the warrant. Officers executed the search of defendant's house that same evening and confiscated 1,658 grams of cocaine.

Defendant argues that the cocaine seized by way of search warrant should have been suppressed for two reasons. First, Trooper Bertee and Sgt. Fisch-

haber illegally trespassed upon the curtilage of his home to obtain his license number. This trespass, argues defendant, violated defendant's reasonable expectations of privacy, thus violating his Fourth Amendment protections. Secondly, the officer entered his home based upon an improper ruse, again in violation of defendant's Fourth Amendment protections. Defendant contends that, because these initial searches were warrantless and unreasonable, and the information gained by those tainted searches was integral to the showing of probable cause for the issuance of the search warrant, the warrant itself was tainted. Therefore, the cocaine and other evidence seized when the warrant was executed should have been suppressed.

For many years, courts held that searches of areas surrounding a home were or were not unreasonable based upon old property concepts. In *People v Taylor,* 2 Mich 250, 252 (1851), quoting Chitty, General Practice, 175, the Court defined curtilage as:

" 'In its most comprehensive and proper legal signification it includes all that space of ground and buildings thereon, which is usually enclosed within the *general fence,* immediately surrounding a principal messuage, out-buildings and yard, closely adjoining to a dwelling-house, but it may be large enough for cattle to be *levant* and *couchant* therein.' " (Emphasis in original.)

Courts considered trespass upon a defendant's curtilage for search purposes per se unreasonable. Pursuant to this definition and legal doctrine, the officers in this case did trespass upon defendant's curtilage by searching for the license plate number on defendant's driveway immediately adjacent to his house.

However, the standard for determining when a search of an area surrounding a residence violates Fourth Amendment guarantees no longer depends upon outmoded property concepts. *United States v Ventling,* 678 F2d 63, 66 (CA 8, 1982); *People v Wagner,* 114 Mich App 541, 547; 320 NW2d 251 (1982). Rather, for a violation of a defendant's Fourth Amendment rights to occur, the defendant must have a reasonable expectation of privacy in the area searched. *Katz v United States,* 389 US 347; 88 S Ct 507; 18 L Ed 2d 576 (1967); *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973). However, the fact that the area searched was within the defendant's curtilage is still a factor a court must consider before determining whether the defendant had a reasonable expectation of privacy in that area.

"There is no single factor which is determinative of an individual's reasonable expectation of privacy. Among the factors mentioned by various courts are: whether the area is within the curtilage of a residence, whether it is open to view from a public area, whether the property was owned by the defendant or in some way controlled by him, whether the defendant had a subjective expectation of privacy, whether the area was enclosed, whether the area was posted against trespass, whether there were obstructions to vision, or whether the area was in fact frequented by neighbors or strangers. We also recognize that a person may permit or even invite intrusion by friends or neighbors into areas as to which he has a reasonable expectation of privacy regarding intrusion by authorities." *People v Dinsmore,* 103 Mich App 660, 669; 303 NW2d 857 (1981), *lv den* 411 Mich 1071 (1981).

In this case, the trial judge found that defendant did not have a reasonable expectation of privacy in that area of his driveway that the officers drove

onto to obtain the license plate number. The court found the driveway to be open and that defendant should reasonably expect people to drive onto it, even though it was a long distance from the public road.

We reverse a trial court's decision on a motion to suppress if that court abused its discretion or its decision was clearly erroneous. *People v Potter,* 115 Mich App 125, 134; 320 NW2d 313 (1982); *People v McIntosh,* 110 Mich App 139, 146; 312 NW2d 415 (1981). We find no such abuse or error here.

While defendant may have had some expectation of privacy in the area of his driveway adjacent to his house, that expectation was not reasonable under these circumstances. First, defendant could not have a reasonable expectation that his license plate number was private. See *United States v Hensel,* 509 F Supp 1376, 1386 (D Me, 1981), *aff'd* 699 F2d 18 (CA 1, 1983). Secondly, the trial court was correct in finding that the defendant could not reasonably expect that individuals would not enter his driveway up to his house as the driveway was open, ungated, and "no trespassing" signs were not displayed. See *Ventling, supra.*

We also disagree with defendant's argument that Trooper Bertee's ruse entry into the house constituted an illegal search. An entry by an undercover police agent into a defendant's house by defendant's invitation is not illegal where the scope of the agent's visit is for the very purpose contemplated by the occupant or defendant. *United States v Ressler,* 536 F2d 208, 211-212 (CA 7, 1976).

Defendant does not dispute that he consented to Bertee's entry. Nor do we find that the "ruse" Bertee employed invalidated that consensual en-

try. Bertee did not affirmatively misrepresent himself; he merely asked defendant if he was the individual living on that road who was selling wood-burning stoves. Bertee did not ask to come into defendant's home. Rather, defendant invited Bertee inside. Bertee accepted that invitation only after first refusing. Bertee did not conduct a search of defendant's home. Instead, he merely followed where defendant led. The cocaine Bertee observed in defendant's kitchen was openly displayed. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz, supra,* 389 US 351. Therefore, we find that, because the scope of Bertee's entry was limited to the very purpose contemplated by defendant, it did not violate defendant's Fourth Amendment protection.

Thus we conclude that the information the investigating officers obtained that formed the basis of probable cause for issuing the search warrant was not illegally obtained in violation of defendant's Fourth Amendment protection to be free from unreasonable searches.

Defendant next argues that the trial court erred by *sua sponte* setting aside defendant's conditional plea of guilty. On January 25, 1982, after the trial court had already ruled that the penalty provided in MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i) was unconstitutional, defendant entered a conditional plea of guilty as charged. The conditions were defendant's retention of the right to challenge the trial court's denial of defendant's motion to suppress and with the understanding that the maximum prison sentence the court could impose on defendant would be seven years. The court did accept this conditional plea. However, on March 8,

1982, when defendant appeared for sentencing, the trial court *sua sponte* withdrew its acceptance of the conditional guilty plea. The court stated its concern about accepting the plea conditioned upon its prior ruling about the penalty provision of the Public Health Code. The trial court also noted that this Court had decided that trial courts should not accept conditional pleas. Thus, on its own motion, the trial court withdrew acceptance of defendant's guilty plea and re-entered a plea of not guilty on defendant's behalf.

GCR 1963, 785.7(6)(b) states:

"The court may take the plea under advisement.

*  *  *

"(b) After the court accepts the plea:

"(i) the court may set it aside on defendant's motion; or

"(ii) the court may *sua sponte* set it aside, *but only with defendant's consent.*" (Emphasis added.)

Defendant argues that the above-emphasized language in the court rule vitiates the trial court's *sua sponte* motion as he did not consent to the setting aside of his conditional plea. We disagree as we do not read the court rule to mandate that a trial court receive a defendant's consent to set aside his plea where, as here, the plea is conditional.

We first note that the acceptability or validity of a conditional plea is questionable. There is now a split in this Court as to whether a conditional plea should be held invalid. See *People v Ricky Smith,* 85 Mich App 32; 270 NW2d 697 (1978) (2-1 decision for invalidity), *People v Hubbard,* 115 Mich App 73, 77; 320 NW2d 294 (1982) (invalid), and *People v Thomas,* 115 Mich App 586; 321 NW2d 742

(1982) (2-1 decision for validity). See, also, *People v Puertas,* 122 Mich App 626, 629; 332 NW2d 399 (1983).

Given that conditional guilty pleas are not mentioned or considered in the court rule, but noting that we do not decide here whether they are indeed valid or invalid as that issue is not now before us, we hold that the consent requirement in GCR 1963, 785.7(6)(b)(ii) applies only to accepted unconditional pleas of guilty or nolo contendere. Therefore, the trial court could *sua sponte* within its discretion move to set aside defendant's conditional plea without defendant's consent. Moreover, we do not find any abuse of discretion in the trial court's action in doing so. Defendant does not show that he was prejudiced by the setting aside of the conditional guilty plea.

We now address the people's appeal of the trial court's opinion finding that the penalty provision for a conviction of possession, with intent to deliver, of 650 or more grams of cocaine contained in the Public Health Code, MCL 333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i), is unconstitutional.

The penalty provisions of the controlled substance provisions of the Public Health Code of 1978, 1978 PA 368, MCL 333.7401-333.7415; MSA 14.15(7401)-14.15(7415), impose graduated penalties for the sale, manufacture, or delivery of drugs and the possession of drugs. The penalties for possession are identical to those for the sale or delivery of the same drugs. Section 7401 states in pertinent part:

"(1) Except as authorized by this article, a person shall not manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. A practitioner licensed by the administrator under this article shall not dispense, prescribe, or administer a controlled

substance for other than legitimate and professionally recognized therapeutic or scientific purposes or outside the scope of practice of the practitioner, licensee, or applicant.

"(2) A person who violates this section as to:

"(a) A controlled substance classified in schedule 1 or 2 which is either a narcotic drug or described in section 7214(a)(iv) and:

"(i) Which is in an amount of 650 grams or more of any mixture containing that substance is guilty of a felony and *shall be imprisoned for life.*" (Emphasis added.)

The trial court found that the statutory classification of cocaine, a nonnarcotic and nonaddictive drug, along with heroin and other addictive narcotics for penalty purposes was irrational and denied a defendant convicted of possession of cocaine with intent to deliver of the equal protection of the law. The court made this finding following a hearing wherein defendant presented substantial scientific and medical evidence regarding the nature and use of cocaine.

This same issue was presented in *People v Harman,* 124 Mich App 93; 333 NW2d 591 (1983), where the defendant was charged with possession of 650 grams or more of cocaine and also faced mandatory life imprisonment if convicted as charged. MCL 333.7403(2)(a)(i); MSA 14.15(7403)(2)(a)(i). The *Harman* Court held that the statutory scheme that placed cocaine in schedule 2 for penalty purposes does not violate the defendant's due process or equal protection rights under the federal or state constitutions. We agree.

The *Harman* decision and this Court in *People v Kaigler,* 116 Mich App 567; 323 NW2d 486 (1982), followed the reasoning of the Illinois Supreme

Court in *People v McCarty,* 86 Ill 2d 247; 427
NE2d 147 (1981), a case upholding Illinois's classi-
fication of cocaine as a narcotic drug for penalty
purposes. *McCarty* found that classification ra-
tional for the following reasons:

"(1) enormous profit from illegal cocaine traffic has
led to a great deal of crime, including violent crime, as
major importers and dealers compete with each other;
(2) a strong correlation between the use of cocaine and
the use of heroin and the opiates; (3) potential harm to
a user inherent in the illegal use of cocaine including
the danger inherent in the increase in the practice of
smoking coca paste or freebase cocaine; and (4) the
ongoing dispute in the scientific and medical commu-
nity as to the potential harm inherent in the use of
cocaine and the abundance of unresolved questions
concerning the effect of cocaine on humans." *Kaigler,* p
571.

See, also, *People v Lemble,* 103 Mich App 220,
222-223; 303 NW2d 191 (1981), *lv den* 412 Mich
888 (1981); *People v Stout,* 116 Mich App 726; 323
NW2d 532 (1982); *People v Kirchoff,* 120 Mich App
617; 327 NW2d 535 (1982); *People v Puertas, su-
pra.*

We too find that the Legislature had a rational
basis for penalizing cocaine possession with intent
to deliver in the same fashion as possession of
addictive narcotics with intent to deliver. There-
fore, we reverse the lower court's November 9,
1981, order holding § 7401(2) unconstitutional and
order this case remanded for resentencing pursu-
ant to the proper penalty provision, MCL
333.7401(2)(a)(i); MSA 14.15(7401)(2)(a)(i).

Affirmed in part, reversed in part, and re-
manded.