PEOPLE v CATANIA

Docket No. 71452. Submitted June 7, 1984, at Grand Rapids.—Decided February 19, 1985.

Defendant, Donald Catania, was convicted by a jury in the Berrien Circuit Court of possession with intent to deliver cocaine and possession with intent to deliver marijuana as a second-felony offender. The trial court, Chester J. Byrns, J., sentenced defendant to concurrent prison terms of from 8 to 40 years on the cocaine conviction and from 5 to 8 years on the marijuana conviction. Defendant appeals. *Held:*

1. The facts indicate that the undercover agent sought entry into the defendant's home to obtain information which then could be used to establish probable cause to obtain a search warrant. The undercover agent's entry into the defendant's home for this express purpose constituted a search within the constitutional sense and was unconstitutional unless justified under one of the recognized exceptions to the warrant requirement. None of the recognized exceptions apply to this case. Under the totality of the circumstances presented in this case, defendant did not waive his Fourth Amendment right to be protected against a search of his home conducted without a warrant.

2. A search without a warrant is not consensual where the police, without probable cause and at the initial stages of a criminal investigation, gain entry into a private home by misrepresenting both identity and scope of visit, thereby creating an opportunity to survey the individual's home for any evidence of criminal activity.

3. The evidence obtained against the defendant must be suppressed.

Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 68 Am Jur 2d, Searches and Seizures § 2.
[2] 68 Am Jur 2d, Searches and Seizures §§ 4, 35.
[3] 68 Am Jur 2d, Searches and Seizures § 47.
[4] 68 Am Jur 2d, Searches and Seizures § 23.
  Observation of objects in "plain view"—Supreme Court cases. 29 L Ed 2d 1067.

J. H. GILLIS, P.J., dissented and would hold that defendant's Fourth Amendment rights were not violated. He would hold that the defendant's secret and his privacy in regards thereto was made public by his own voluntary actions. He would further hold that, although the marijuana was not originally in plain view, it was later voluntarily placed in plain view by the defendant. The undercover agent did not exceed the scope of the permission given to her in regard to her entry into defendant's home. He would affirm.

OPINION OF THE COURT

1. SEARCHES AND SEIZURES — PRIVACY.

The test applied by courts to determine whether or not a search has taken place is whether the police have intruded into an area in which the defendant had a reasonable expectation of privacy.

2. SEARCHES AND SEIZURES — CONSTITUTIONAL LAW.

Entry into a person's home without a warrant is the paramount evil against which the Fourth Amendment is designed to protect; individuals have a reasonable expectation of privacy in their homes, therefore, searches inside a home without a warrant are presumptively unreasonable, unless justified under one of the recognized exceptions to the warrant requirement (US Const, Am IV).

3. SEARCHES AND SEIZURES — WAIVER — CONSTITUTIONAL LAW.

A search without a warrant is not consensual where the police, without probable cause and at the initial stages of a criminal investigation, gain entry into a private home by misrepresenting both identity and scope of visit, thereby creating an opportunity to survey the individual's home for any evidence of criminal activity; consent given under such circumstances does not constitute a valid waiver of the defendant's Fourth Amendment rights; the random selection of private homes as targets of ruses designed by the police to obtain entry for the purpose of generally looking around for any signs of criminal activity where there is no probable cause to support such an entry cannot be condoned (US Const, Am IV).

DISSENT BY J. H. GILLIS, P.J.

4. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE — WAIVER.

*A person's secret and his privacy in regards thereto can be made public by his own voluntary actions; a person who voluntarily allows another person into his home waives secrecy and his privacy so far as what that person may observe within the*

*scope of the permission given; at this point, upon entry, the plain view doctrine applies in regard to the requirement of a warrant for a search and seizure in the home.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Paul L. Maloney,* Prosecuting Attorney, and *Brian Berger* and *John T. Burhans,* Assistants Prosecuting Attorney, for the people.

*Law Offices of Michael C. Dorstewitz* (by *Michael C. Dorstewitz),* for defendant on appeal.

Before: J. H. GILLIS, P.J., and M. J. KELLY and C. H. MULLEN,* JJ.

M. J. KELLY, J. Defendant appeals as of right from jury convictions of possession with intent to deliver cocaine, MCL 333.7401, subds (1) and (2)(a)(iv); MSA 14.15(7401), subds (1) and (2)(a)(iv), and possession with intent to deliver marijuana, MCL 333.7401, subds (1) and (2)(c); MSA 14.15(7401), subds (1) and (2)(c), as a second-felony offender, MCL 333.7413; MSA 14.15(7413). He was sentenced to concurrent prison terms of from 8 to 40 years on the cocaine conviction and from 5 to 8 years on the marijuana conviction. Defendant received credit for 19 days served pending conviction.

At trial, JoAnn Ward testified that in March of 1981 she was an 18-year-old law enforcement student employed as a confidential police informant for the Berrien County Metro Narcotics Squad. Prior to her involvement in this case, she had worked for the department on approximately 30 occasions. At 7:30 p.m. on March 10, 1981, Ward, at the direction of the police, knocked on the back door of the residence located at 2106 Russell Road

---

* Circuit judge, sitting on the Court of Appeals by assignment.

in Baroda Township and informed the defendant, who answered the door, that she was experiencing car trouble just outside his house. Ward asked to use defendant's telephone and defendant admitted her to the house and directed her to the phone. After making a bogus call, Ward and defendnt sat at the kitchen table and Ward initiated a discussion about "partying", informing the defendant that she was on her way to a party at that time. At some point, defendant offered Ward "a joint" and Ward accepted. According to Ward, she had not requested nor observed any marijuana prior to this point. Defendant and Ward sat at the table and continued to talk as defendant rolled the joint and they passed it back and forth, smoking. When Ward asked the defendant if he lived alone, he said yes. Ward was at the residence for approximately 1/2 hour, during which time she did not leave the kitchen area. Before departing, Ward asked the defendant if she could get a couple of joints for the road. Defendant replied that he did not have enough. Ward then asked the defendant if he knew where she could obtain some "coke", to which defendant responded: "What do you think you fell into here?" Ward and defendant discussed the possibility of meeting the following evening and Ward left to report her findings to the police.

Based on the information obtained from Ward, Deputy Sheriff Daniel Peppel swore out an affidavit and obtained a warrant authorizing the police to search defendant's residence for a "quantity of green leafy substance believed to be marijuana". The warrant was executed at approximately 10:30 that evening. In the closet of the master bedroom, officers discovered a triple-beam scale and a large green garbage bag in the shape of a brick or a block containing a substance later identified as marijuana. One of the officers opened a dresser

drawer and observed a large amount of currency and a plastic bag containing a white powdery substance, later identified as cocaine. At that point, Commander Steven Marschke left the residence and conferred with an assistant prosecutor who was waiting in a vehicle outside. The two decided to obtain another search warrant. Marschke then reentered the house and placed defendant under arrest for possession of marijuana. Upon the issuance of the second search warrant, the police seized 19.2 grams of cocaine.

As the result of pretrial proceedings, the trial court ruled that the second search warrant was invalid because it contained blank spaces. The court refused, however, to suppress the cocaine seized pursuant to that second warrant, holding that the cocaine was properly seized in the execution of the first search warrant. Defendant's emergency application for interlocutory appeal was denied and trial was held in March of 1983.

Defendant challenges his convictions on several gounds, one of which requires reversal.

The significant issue in this case is whether Ward's initial entry into the defendant's home without a warrant constituted an unreasonable and illegal search under both state and federal constitutions. Const 1963, art 1, § 11; US Const, Am IV. Defendant contends that the intrusion was a violation of his reasonable expectation of privacy and was not justified under the consent exception to the search warrant requirement because his "consent" was not intelligently and voluntarily made. The prosecution argues: (1) that Ward's entry does not constitute a search in the constitutional sense, (2) that even if the entry was a search, it was obtained with defendant's consent, and (3) that the Fourth Amendment does not vitiate defendant's misplaced confidence in Ward.

Preliminarily, we note that the investigatory purpose of Ward's entry is not in dispute. As an agent of the police,[1] Ward sought entry into the defendant's home to obtain information which could then be used to establish probable cause to obtain a search warrant.

In the first step of our analysis, we consider whether Ward's entry into defendant's home constitutes a search within the meaning of both the Michigan and United States Constitutions. The test for determining whether a search has taken place is whether the police have intruded into an area in which the defendant had a reasonable expectation of privacy. *Katz v United States,* 389 US 347; 88 S Ct 507; 19 L Ed 2d 116 (1973). It is, of course, well established that individuals have a reasonable expectation of privacy in their homes and that searches inside a home without a warrant are presumptively unreasonable. *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971); *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975). In fact, entry into a person's home without a warrant is the paramount evil against which the Fourth Amendment is designed to protect. *Payton v New York,* 445 US 573, 585-586; 100 S Ct 1371; 63 L Ed 2d 639 (1980). We find that Ward's entry into defendant's home for the express purpose of investigating possible criminal activities constituted a search within the constitutional sense.[2] Because it was conducted with-

---

[1] There is no dispute but that Ward was acting at the direction and with the assistance of the police when she entered defendant's home and is therefore a police agent subject to the constitutional limitations imposed by the Fourth Amendment and by Const 1963, art 1, § 11. See *People v Wagner,* 114 Mich App 541, 551; 320 NW2d 251 (1982).

[2] Our analysis is limited to the legality of the police entry. We acknowledge that if the entry is constitutionally permissible, nothing that occurred in the defendant's home following the entry contravenes any constitutional limitations.

out a search warrant, that entry was unconstitutional unless justified under one of the recognized exceptions to the warrant requirement. *Coolidge, supra.*

The prosecution relies upon the consent exception in attempting to justify the search in the instant case, arguing that defendant waived any expectation of privacy when he allowed Ward into his home to make a telephone call. Once in, the prosecution reasons, Ward merely observed from a permissible vantage point evidence that defendant voluntarily placed in plain view.

We are presented in this case with the difficult and sensitive task of delineating the line at which the ruse entry, an established tool of undercover police investigation, impermissibly invades rights and privileges guaranteed under the Fourth Amendment. We fully recognize and sympathize with the need of the police to gain entry into places of suspected criminal activity for investigatory purposes. Undercover police operations are particularly useful and necessary to expose clandestine criminal offenses such as drug trafficking. Our quarrel is not, therefore, with the use of "ruse entries" per se. Our concern is with the unchecked use of that technique as a means of gaining entry into private homes where there is no probable cause to support a search warrant. We believe that the competing constitutional and societal interests at stake require that some limitations be imposed upon the police use of ruse entries during the investigation of suspected criminal activity.

In formulating limitations to be imposed on the use of ruse entries into private homes by the police, we first consider the circumstances under which that technique is constitutionally permissible. In *Lewis v United States,* 385 US 206; 87 S Ct 424; 17 L Ed 2d 312 (1966), *reh den* 386 US 939; 87

S Ct 951; 17 L Ed 2d 811 (1967), a federal narcotics agent misrepresented his identity by informing the defendant of a mutual acquaintance and inquiring whether defendant would sell him some marijuana. Defendant responded with interest and invited the agent to his home where a drug purchase was eventually executed. The agent followed up with a second buy a short time later. Defendant argued in his motion to suppress that "any official intrusion upon the privacy of a home constitutes a Fourth Amendment violation and * * * the fact the suspect invited the intrusion cannot be held a waiver when the invitation was induced by fraud and deception". 385 US 208. In an opinion written by former Chief Justice Earl Warren, the Court stated:

"In the instant case, on the other hand, the petitioner invited the undercover agent to his home *for the specific purpose of executing a felonious sale of narcotics.* Petitioner's only concern was whether the agent was a willing purchaser who could pay the agreed price. Indeed, in order to convince the agent that his patronage at petitioner's home was desired, petitioner told him that, if he became a regular customer there, he would in the future receive an extra bag of marijuana at no additional cost; and in fact petitioner did hand over an extra bag at a second sale which was consummated at the same place and in precisely the same manner. *During neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business.* Were we to hold the deceptions of the agent in this case constitutionally prohibited, we would come near to a rule that the use of undercover agents in any manner is virtually unconstitutional *per se.* Such a rule would, for example, severely hamper the Government in ferreting out those organized criminal activities that are characterized by covert dealings with victims who either cannot or do

not protest. A prime example is provided by the narcotics traffic." (Emphasis added.) 385 US 210.

*Lewis* has been followed in non-narcotic cases, such as *United States v Schuster,* 684 F2d 744 (CA 11, 1982), where defendant invited an undercover police agent to his apartment for the express purpose of purchasing counterfeit money, and *Jones v Berry,* 722 F2d 443 (CA 9, 1983), where an undercover IRS agent posed as a prospective purchaser of a small business and persuaded a prospective seller to expose illegal "skimming" activities. In both cases, the federal appeals courts found the entry permissible because consent to the entry was provided for the specific purpose intended to be accomplished by the government agent.[3] They concluded that where an undercover police agent obtains entry into a place protected by the Fourth Amendment by misrepresenting identity and by announcing a purpose contemplated by the defendant in allowing entry, the entry and search will be viewed as consensual and a warrant is not required.

We are not presented here with a *Lewis* type situation. The police agent in this case not only misrepresented her identity but also misrepresented the purpose for which entry was sought. The question that arises is whether an individual's

---

[3] In both cases, the federal circuit court also noted that the Fourth Amendment does not protect "misplaced confidences", citing *Hoffa v United States,* 385 US 293; 87 S Ct 408; 17 L Ed 2d 374 (1966). The prosecutor in this case relies upon *Hoffa* as well. In that case, the police agent was a local union official already known to the defendant Hoffa. The agent approached defendant for the purpose of discussing his own problems with the law and was asked by federal authorities to be on the lookout for evidence that defendant was tampering with the jury selected to hear certain criminal charges. *Hoffa* does not involve a ruse entry, such as presented in the instant case, where a complete stranger is admitted to an indivdual's home in order to uncover any signs of any criminal activity. We decline to find *Hoffa* controlling in the instant case.

consent under these circumstances constitutes a valid waiver of Fourth Amendment rights.[4]

The prosecution contends that the answer to this question is provided in *People v Taormina,* 130 Mich App 73; 343 NW2d 236 (1983). In that case, two undercover officers attempted to obtain the license plate number on the defendant's jeep and pulled their unmarked car into defendant's circular driveway where the jeep was parked. Upon realizing that the defendant had observed their activities from inside his house, and wanting to avoid arousing defendant's suspicions, one of the officers knocked on defendant's door and inquired about purchasing a wood-burning stove and firewood, feigning reliance on an advertisement which he had previously observed at the home of a neighbor. Defendant directed the officer to the neighbor's house, however, as the two engaged in a discussion about fireplaces and wood-burning stoves, defendant offered to show the officer the two stoves located in his house. The officer initially refused the invitation but, upon defendant's insistence, subsequently entered. As he walked through the defendant's kitchen, the officer observed what he believed to be cocaine and subsequently ob-

---

[4] Defendant cites *Gouled v United States,* 255 US 298; 41 S Ct 261; 65 L Ed 647 (1921). There, an army agent gained entry into the defendant's office by some friendly ruse. When defendant left the office for a short time, the agent rummaged through defendant's personal papers and removed from his office several documents evidencing defendant's involvement in a fraudulent scheme. The Supreme Court held that such an entry and search was violative of the defendant's Fourth Amendment rights. *Gouled* does not, however, answer the question of whether it is constitutionally permissible for a government agent to gain entry into an individual's home by misrepresenting both identity and purpose and then proceed to survey, though not rummage through, the home for any sign of criminal activity. At best, *Gouled* establishes that Ward could not have gained entry into the defendant's home by feigning car trouble and then proceed to rummage through defendant's kitchen for evidence of criminal activity. That is not the problem presented in the instant case.

tained a search warrant based on that information.

In affirming the trial court's denial of defendant's motion to suppress, this Court in *Taormina* held:

"An entry by an undercover police agent into a defendant's house by defendant's invitation is not illegal where the scope of the agent's visit is for the very purpose contemplated by the occupant or defendant. *United States v Ressler,* 536 F2d 208, 211-212 (CA 7, 1976).

"Defendant does not dispute that he consented to Bertee's entry. Nor do we find that the 'ruse' Bertee employed invalidated that consensual entry. Bertee did not affirmatively misrepresent himself; he merely asked defendant if he was the individual living on that road who was selling wood-burning stoves. Bertee did not ask to come into defendant's home. Rather, defendant invited Bertee inside. Bertee accepted that invitation only after first refusing. Bertee did not conduct a search of defendant's home. Instead, he merely followed where defendant led. The cocaine Bertee observed in defendant's kitchen was openly displayed." 130 Mich App 80-81.

We find that *Taormina* is distinguishable from the instant case in two important ways and thus find inapposite the prosecution's reliance on that case to justify the entry in the instant case. First, the officer in *Taormina* did not set out to enter the defendant's home in order to gather evidence of criminal activities. The officer's ruse was developed in an attempt to avoid detection. Second, the officer in *Taormina* was allowed entry for the purpose contemplated by the defendant. The intended scope of the officer's entry was limited to the very purpose contemplated by the defendant in consenting to the entry. The officer's observation of the cocaine was mere happenstance. We thus

find *Taormina* more akin to the "inadvertent" plain view exception to the search warrant requirement. See *People v Raybon,* 125 Mich App 295, 300; 336 NW2d 782 (1983); *People v Myshock,* 116 Mich App 72, 76; 321 NW2d 849 (1982); *United States v Hare,* 589 F2d 1291 (CA 6, 1979).

We find supportive the Iowa Supreme Court's decision in *State v Ahart,* 324 NW2d 317 (Iowa, 1982), involving a remarkably similar factual situation. In that case, an undercover agent obtained entry into the defendant's home by pretending to have engine trouble and requesting that he be allowed to use the defendant's telephone to call for assistance. While making the bogus telephone call, the agent observed some marijuana in plain view. As in the instant case, a search warrant was subsequently obtained on the basis of this information and defendant was arrested. The Iowa Supreme Court reversed the defendant's conviction on the ground that the police entry into his home violated his Fourth Amendment right to be protected against police intrusion. The court gave significant weight to the fact that the prosecution had failed to establish any basis for choosing the defendant's home for undercover investigation:

"While we recognize that a warrantless entry effected by ruse must often be allowed if the government is to ferret out 'those organized criminal activities that are characterized by covert dealings,' * * * we are equally cognizant that the security of one's home against arbitrary intrusion by the police is at the core of the Fourth Amendment and basic to our society. * * * Consequently, not all warrantless entries gained by ruse are valid. Certainly, such an entry is not allowable if it is arbitrary.

"It is our conslusion that consent given to a warrantless entry to a private home is invalid if the police, absent a show of cause, obtain entry by ruse. As noted

previously, this cause may be based on the officer's participation with the consentor in an illegal transaction or it may be grounded on a reasonable belief that criminal activity is afoot. The consent is clearly invalid, however, when there is no reason shown for selecting a particular home to enter. We hold that a search is patently unreasonable as an arbitrary intrusion when it is based upon consent obtained by deception unless there is a justifiable and reasonable basis for the deception." 324 NW2d 319.

We echo the Iowa Supreme Court's concern with the arbitrary use of ruse entries into private homes, though we do not at this time adopt the "justifiable and reasonable basis" test in evaluating whether deception is justified. We cannot condone the random selection of private homes as targets of ruses designed by the police to obtain entry for the purpose of generally looking around for any signs of criminal activity where there is no probable cause to support such an entry. There is nothing in this record to suggest what prompted the authorities to select defendant as the subject of a criminal investigation. Ms. Ward had never met defendant and neither affidavit for the two search warrants recites facts predating her entry of defendant's residence.

We find that under the totality of the circumstances presented in this case, defendant did not waive his Fourth Amendment right to be protected against a search of his home conducted without a warrant. Our holding is a narrow one. A search without a warrant is not consensual where the police, without probable cause and at the initial stages of a criminal investigation, gain entry into a private home by misrepresenting both identity and scope of visit, thereby creating an opportunity to survey the individual's home for any evidence of

criminal activity.[5] Defendant's conviction is reversed and all evidence obtained must be suppressed as the fruit of an illegal entry. *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

Reversed.


C. H. MULLEN, J., concurred.


J. H. GILLIS, P.J. *(dissenting).* I respectfully dissent from the majority's view of this case. In rejecting the defendant's argument that his Fourth Amendment rights had been violated, the trial court stated as follows:

"There is an old adage that a secret is no longer a secret when more than one person knows it. A person's secret and his privacy in regards thereto can be made public by his own voluntary actions.

"Now, when a person voluntarily allows another person into his home, he waives secrecy and his privacy so far as what that person may observe within the scope of the permission given. He takes that person for what he or she actually is; a 'gossip', a 'snitch', or in this case, an undercover agent. At that point, of course, upon entry, the plain view doctrine applies.

"However, in the case before us, based on the record, the marijuana was not originally in plain view, but it was later voluntarily placed in plain view by Mr. Catania as a part of his hospitality. There is no evidence that at any time the undercover agent in anyway exceeded this scope of the permission given her, such as going into another room, opening a drawer or some similar action, or that she took anything out of the house.

"Likewise, this is not a case where entry was ob-

[5] But see *United States v Wright*, 641 F2d 602 (CA 8, 1981), *cert den* 451 US 1021; 101 S Ct 3014; 69 L Ed 2d 394 (1981); *United States v Raines*, 536 F2d 796 (CA 8, 1976), *cert den* 429 US 925; 97 S Ct 327; 50 L Ed 2d 293 (1976).

tained by use of some governmental force, such as the undercover agent posing and claiming right to entry as a building inspector. In fact, there was no assertion of right, contractual, governmental or otherwise, to entry by the undercover agent."

I agree with the trial court's reasoning and thus would vote to affirm the conviction.