[No. 8291-8-II.   Division Two.   December 11, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v. JERRY K. HASHMAN, *Appellant*.

*G. Saxon Rodgers* and *Ditlevson, Rodgers & Jarrett, P.S.,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *John S. Bumford, Deputy,* for respondent.

PEARSON, J.*—Jerry Hashman appeals the denial of his motion to suppress evidence found in his rented home, claiming that the police illegally used a ruse to enter the house and that the warrant, based upon information obtained during the entry, was defective. He also claims that the findings of fact do not support the conclusions of law. We affirm.

Hashman was renting a house that Thurston Youth Services (TYS) was considering for use as a group home. On May 7, 1984, TYS representatives, including a Lacey police officer, visited the home to inspect it. The officer, Walt Berggren, attended only in a civilian capacity. While touring the home, he smelled a musty odor that he thought was marijuana coming from a locked room that allegedly contained auto parts and tools. A week later Berggren observed Hashman's house from a nearby driveway. He noticed that the window in the locked room was covered, but that there was a halo of bluish light around the window, which he associated with a marijuana growing operation.

Another week later Berggren reported his findings to Officer Suessman, who was a member of Thurston County's Drug Enforcement Unit. The week delay was due to the fact that Suessman was on vacation during the time Berggren visited and observed Hashman's home.

Suessman was concerned that Berggren's information would be stale because Hashman could have moved from

---

*This appeal was heard by a Supreme Court Justice and two Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division Two.

the residence or moved the marijuana. With permission from the landlord (owner) of the house, he went to the house and contacted Hashman and told him he was a contractor and needed to look at the residence for minor renovation work. Hashman agreed to the visit and gave Suessman and a fellow officer a tour of the home. Suessman smelled the distinct odor of fresh growing marijuana and noticed mold and mildew along the ceiling of the wall adjacent to the locked room. Suessman walked outside the house and observed the covered window and moisture that appeared to be coming from the inside. Based on these findings, Suessman obtained a telephonic search warrant, returned to the house, and seized marijuana plants and records.

Hashman argues that the seized evidence should be suppressed because it was illegal for Suessman to use a ruse to enter the house to obtain probable cause for the warrant. The State contends that Hashman consented to Suessman's entry and tour through the house.

Both the United States and Washington Constitutions protect a citizen's privacy interests. U.S. Const. amend. 4; Const. art. 1, § 7. The protection covers areas where the citizen has an expectation of privacy, so long as it is an expectation that society recognizes as reasonable. *United States v. Roberts*, 747 F.2d 537, 541 (9th Cir. 1984). Without question, the home is accorded the full range of Fourth Amendment protections. *Lewis v. United States*, 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424, 427 (1966).

The Washington State Constitution affords individuals greater protections against warrantless searches than does the Fourth Amendment. The provision "no person shall be disturbed in his private affairs, or his home invaded, without authority of law" is unlike any provision in the federal constitution and explicitly protects the privacy rights of Washington citizens and these privacy rights include the freedom from warrantless searches absent special circumstances. *State v. Stroud*, 106 Wn.2d 144, 148, 720 P.2d 436 (1986).

■ A warrantless search is constitutional when valid consent is granted. *Washington v. Chrisman,* 455 U.S. 1, 9–10, 70 L. Ed. 2d 778, 787, 102 S. Ct. 812, 818 (1982). A valid consensual search requires that: (1) the consent be "voluntary"; (2) the consent be granted by a party having authority to consent; and (3) the search be limited to the scope of the consent granted. Utter, *Survey of Washington Search and Seizure Law,* 9 U. Puget Sound L. Rev. 1, 112 (1985). The issue of whether consent to a search was voluntary is a question of fact to be determined from the totality of circumstances. *Schneckloth v. Bustamonte,* 412 U.S. 218, 229, 36 L. Ed. 2d 854, 862–63, 93 S. Ct. 2041, 2047–48 (1973); *State v. Williamson,* 42 Wn. App. 208, 710 P.2d 205 (1985). The use of deception by a police officer does not necessarily affect the voluntariness of a consent to search. *State v. Myers,* 102 Wn.2d 548, 553, 689 P.2d 38 (1984). In *Myers,* the police used a ruse to enter a home to serve a valid warrant. Although the issue of using a ruse to enter a home to establish probable cause for a search warrant is one of first impression in Washington, it has been addressed in other jurisdictions.

The Iowa Supreme Court held that an entry by ruse must be grounded on a reasonable belief that criminal activity is afoot. *State v. Ahart,* 324 N.W.2d 317 (Iowa 1982). In *Ahart,* two officers pretended to have car trouble and knocked on the defendant's door asking to use the phone. While pretending to place a credit card call, the officer observed marijuana and drug paraphernalia in the room. After leaving the house, the officer obtained a search warrant based on his observations while in the home. The court found the search unreasonable, stating that "a search is patently unreasonable as an arbitrary intrusion when it is based upon consent obtained by deception unless there is a justifiable and reasonable basis for the deception." Intrusion into a home based on mere conjecture or idle curiosity violates the Fourth Amendment. *State v. Ahart,* 324 N.W.2d at 319.

The Iowa court's reasoning has been followed by Michi-

gan and Alaska. The Michigan Court of Appeals stated "[W]e cannot condone the random selection of private homes as targets of ruses designed by the police to obtain entry for the purpose of generally looking around for any signs of criminal activity where there is no probable cause to support such an entry." *People v. Catania,* 140 Mich. App. 755, 767, 366 N.W.2d 38, 44 (1985). The Alaska Supreme Court, in finding no constitutional violation in an entry by ruse, noted that "this was not a random canvass of the homes in the neighborhood where the moose remains had been found." The court noted that the officer had received enough information pointing to the defendant to support the ruse. *Guidry v. State,* 671 P.2d 1277, 1282 (Alaska 1983).

Other courts have found ruses to be valid by reasoning that what a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. *Katz v. United States,* 389 U.S. 347, 351, 19 L. Ed. 2d 576, 582, 88 S. Ct. 507, 511 (1967). Arizona has allowed the police to pose as prospective home buyers to enter the rented home of the defendant. *State v. Poland,* 132 Ariz. 269, 645 P.2d 784 (1982). During the tour of the home the officers noticed a number of firearms and two motorcycles, and a search warrant was then obtained. The court said that the only limitation appears to be that the agent is limited to conduct which would be normal for one adopting the guise used in seeking entry. *State v. Poland,* 645 P.2d at 792. A similar search was upheld in Louisiana, where an officer posing as a cousin of the defendant's friend entered the home and spotted marijuana seeds. *State v. McCommons,* 398 So. 2d 1100, 1101 (La. 1981). The court cited *Katz* to validate the warrant obtained after the officer's visit.

The recognition of the necessity for undercover police activity has been the basis to support an officer's use of a ruse. Officers in Michigan, who received a tip about the defendant, pretended to have car trouble and went to the defendant's motel room and asked to borrow tools. The

police officers could see inside the motel unit and saw white powdery substances and drug paraphernalia on a desk or dresser. They used this information to obtain a warrant. The court held that "[W]e recognize 'the necessity for some undercover police activity' and that 'in the detection of many types of crime, the Government is entitled to use decoys and to conceal the identity of its agents.'" *United States v. Wright,* 641 F.2d 602, 604–05 (8th Cir. 1981).

We also recognize the need for officers to conduct undercover police investigations. *See State v. Huckaby,* 15 Wn. App. 280, 549 P.2d 35 (1976). However, we are concerned about unlawful intrusions into the homes of our citizens. We note that in each instance where a court has upheld a ruse entry, the officers had a reasonable suspicion that criminal activity was occurring at the residence. We agree with the Iowa court that this is a prerequisite to a valid ruse entry. Suessman certainly had a reasonable suspicion that Hashman may have a marijuana growing operation in his house. Berggren had not only smelled the marijuana during a legitimate visit to the home, he had viewed the home from the outside and saw signs of such an operation. We hold that when an officer has a justifiable and reasonable basis to suspect criminal activity in a residence, a ruse entry is permissible. This permission is to be construed narrowly. It is not our intent to permit officers to use a ruse to conduct random searches of a neighborhood. We specifically hold that for each entry, the police must have a justifiable and reasonable basis to suspect criminal activity.

Hashman also argues that there was insufficient evidence to establish probable cause for the warrant, that the information from Berggren was too stale to support the warrant, and that the affidavit made by Suessman to support the warrant contained statements that were either false or made with reckless disregard to the truth.

To establish probable cause, the affidavit must set forth sufficient facts to lead a reasonable person to conclude there is a probability that the defendant is involved in

criminal activity. *State v. Cord,* 103 Wn.2d 361, 366, 693 P.2d 81 (1985). Great deference is accorded the issuing magistrate's determination of probable cause. *Cord,* 103 Wn.2d at 366. We conclude that Suessman's affidavit, which included observations from his visit to Hashman's house as well as information he received from Berggren, was sufficient to support a warrant.

The test for staleness in an affidavit is common sense. *State v. Hett,* 31 Wn. App. 849, 852, 644 P.2d 1187 (1982). The information from Berggren was 2 weeks old when given to the magistrate by Suessman. Although this information may have been stale if standing alone, the information was confirmed by Suessman's visit to the house.

■ If a defendant claims that a knowingly and intentionally false statement, or one made with reckless disregard for the truth, was included by the affiant in the warrant affidavit, the defendant must establish his allegations by a preponderance of the evidence. *Cord,* 103 Wn.2d at 367. In requesting the warrant, Suessman did not tell the judge that the information from Berggren was based on Berggren's earlier visits to the home. This omission does not appear to have been done with reckless disregard for the truth. Suessman also said that he assumed Berggren had similar training in the detection of controlled substances, although he could not document it. This statement also does not appear to have been made with reckless disregard for the truth. Hashman has produced no evidence to meet his burden of proof.

■ Hashman claims that findings of fact do not support some of the conclusions of law. This court's role is to determine whether substantial evidence supports the trial court's findings and whether those findings support the conclusions of law and the judgment. *Group Health Coop. of Puget Sound, Inc. v. Department of Rev.,* 106 Wn.2d 391, 397, 722 P.2d 787 (1986). The trial court's findings will not be disturbed on appeal if supported by substantial evidence. Substantial evidence is evidence of sufficient quantum to persuade a fair-minded person of the truth of the declared

premise. *Group Health,* 106 Wn.2d at 397. There is substantial evidence to support the finding that Hashman consented to having the police officers enter his home, Suessman's statement in his affidavit that the fresh smell of marijuana was emanating from the locked room, and the magistrate's finding of probable cause for the search.

Hashman finally argues that there was not substantial evidence to support the conclusion that Officers Berggren and Suessman did smell green growing marijuana outside the door of the locked growing room. Both officers testified that they smelled marijuana and the record shows that both had experience detecting marijuana. The evidence supports the court's finding.

The trial court's denial of the motion to suppress is affirmed. The ruse used to enter the house was valid, the seizure of the marijuana was pursuant to a valid warrant, and the findings of fact support the court's conclusions of law.

DAY and WIELAND, JJ. Pro Tem., concur.

Review denied by Supreme Court June 2, 1987.