[No. 57309-3.   En Banc.   June 4, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. WILLIE ALLEN HASTINGS, *Petitioner.*

230

*Scott J. Engelhard* and *Finegold & Zulauf,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Peter Goldman, Deputy,* for respondent.

DURHAM, J. — On November 4, 1986, two undercover Seattle police officers went to a house to buy drugs after receiving complaints. They knocked on the front door, stated their purpose, and were invited inside. Upon entry, they saw customers lined up before a table, at which sat Willie Hastings. When their turn came, each officer bought a small amount of rock cocaine from Hastings.

Based on information provided by the officers, police obtained a search warrant for the house. Police went to the house to serve the warrant at about 1:30 a.m. on November 5, 1986. The officers knocked on the door, identified themselves, announced that they had a search warrant, and demanded entry. From inside the house, the police heard people running away from the door. A few seconds later, the police forced the door open.

Inside, the police found approximately 18 people, including Hastings. Hastings and several other people were ordered to lie down on the floor. The police subsequently discovered cocaine near Hastings, and arrested him for possession of a controlled substance.

Hastings was charged with two counts of unlawful delivery and one count of possession. Prior to trial, he moved to suppress evidence. Hastings primarily argued first, that the initial entry by undercover officers was an illegal warrantless search, and second, that the subsequent search warrant was executed in violation of the knock and announce rule. The motion was denied, and a jury found him guilty of the

delivery charges, but was unable to reach a verdict on the possession charge. The Court of Appeals affirmed the conviction. We accepted review, and we now affirm.

## WARRANTLESS ENTRY

■ The Court of Appeals correctly held that the initial entry here was permissible because no constitutionally protected expectation of privacy was involved. *State v. Hastings*, 57 Wn. App. 836, 839, 790 P.2d 645 (1990). This holding follows from the longstanding rule:

> What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. *See Lewis* v. *United States*, 385 U. S. 206, 210[, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966)] . . . But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. . . .

(Citation omitted.) *Katz v. United States*, 389 U.S. 347, 351, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967).

There is no reasonable expectation of privacy in a home where illegal business is openly conducted and, therefore, it is not entitled to Fourth Amendment protection.

> [W]hen, as here, the home is converted into a commercial center to which outsiders are invited for purposes of transacting unlawful business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

*Lewis v. United States*, 385 U.S. 206, 211, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966), *quoted in Hastings*, at 839. As noted in a concurring opinion, the Fourth Amendment offers protection against intrusion into the sanctity of the home. "However, the occupant can break the seal of sanctity and waive his right to privacy in the premises." *Lewis*, at 213 (Brennan, J., concurring).[1]

---

[1]Although *Lewis* holds that an occupant's expectation of privacy is abandoned when illegal business is conducted on the premises, the scope of any search must be limited to the "commercial" vicinity. An expectation of privacy in that portion of the premises not open to the public is retained by the occupant.

■ This court's cases offer further justification for this conclusion. As we have said, "the focus is whether the 'private affairs' of an individual have been unreasonably violated rather than whether a person's expectation of privacy is reasonable." *State v. Boland*, 115 Wn.2d 571, 580, 800 P.2d 1112 (1990). Hastings' private affairs are in no way implicated here. He was openly engaged in selling drugs when the officers entered. Business transactions with the public are not "private affairs".

Hastings argues that the rule from *State v. Hashman*, 46 Wn. App. 211, 729 P.2d 651 (1986), *review denied*, 108 Wn.2d 1021 (1987) should be applied here because the police used deception to gain entry.[2] In *Hashman*, at 216, the Court of Appeals held that the police must have a "justifiable and reasonable basis to suspect criminal activity" before they may effect a ruse entry. However, *Hashman* does not apply. *See Hastings*, 57 Wn. App. at 839. Where there is no expectation of privacy, the Fourth Amendment is not implicated. Moreover, the threshold requirement set forth in *Hashman* for using a ruse is an unnecessary limitation on undercover police investigations. This court has never utilized such a rule, and the proposed threshold requirement serves no valid purpose.

In sum, the Court of Appeals correctly held that the premises here were "a center for transacting unlawful business, and thus were not an area in which the occupants had a constitutionally protected expectation of privacy." *Hastings*, at 839. We adopt that reasoning.[3]

■ It is also worth noting that even if the Fourth Amendment did apply, our decision would be justified. The Fourth

---

[2]The State conceded on appeal to this court that *Hashman* applies. See Supplemental Brief of Respondent, at 7-8. However, we are not bound by this concession.

[3]Hastings also argues that the Court of Appeals should be reversed, because under *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980), he has automatic standing to challenge the search. Our holding does not implicate standing; rather, we hold that the Fourth Amendment does not apply at all to the entry here.

Amendment protects against unreasonable search and seizure. A search without a warrant is presumed to be unreasonable, " '. . . subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973) (quoting *Katz v. United States, supra* at 357).

■ A search conducted pursuant to consent is proper, even absent a warrant. *Schneckloth*, 412 U.S. at 219; *State v. Mak*, 105 Wn.2d 692, 713, 718 P.2d 407, *cert. denied*, 479 U.S. 995 (1986). In any consent case, two issues are involved: was there a valid, voluntary consent by the defendant or a competent third party, and did the ensuing search exceed the scope of the consent?[4] *See generally* 3 W. LaFave, *Search and Seizure* § 8.1, at 147-48 (2d ed. 1987). When consent is obtained by concealing the true identity of the entrants, we must determine if the ruse vitiated that consent.

■ In *Lewis v. United States, supra*, the Court found that a warrantless entry under almost identical circumstances to those here did not run afoul of the Fourth Amendment. The Court held that the undercover activity was permitted.[5] It reasoned that the agent had been invited into the petitioner's home for the illegal purpose of purchasing drugs, and that the conduct involved did not exceed this

---

[4]There are cases in which ruses were employed which deal with the scope of consent. For instance, in a case cited in *Lewis*, the government agent ransacked the defendant's office and seized private papers. *Gouled v. United States*, 255 U.S. 298, 65 L. Ed. 647, 41 S. Ct. 261 (1921). Even though the entry, obtained by representing that the visit to the office was for social purposes only, was consensual, the Fourth Amendment was violated. *Gouled*, at 305-06. The salient point was the determination of the appropriate scope of consent. There is no claim in this case that the search exceeded the proper scope.

[5]In a more recent case in another context, the Court said again: "there can be no dispute that the Government may use undercover agents to enforce the law. . . . Artifice and stratagem may be employed to catch those engaged in criminal enterprises.'
". . . .
"Thus, an agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later." (Citations omitted.) *Jacobson v. United States*, ___ U.S. ___, 118 L. Ed. 2d 174, 184-85, 112 S. Ct. 1535 (1992).

invitation. *Lewis*, 385 U.S. at 210. An entry made onto the premises to transact the business being undertaken does not require a warrant. Significantly, the Court noted that to hold otherwise would render undercover operations virtually impossible. *Lewis*, at 210. Thus, under the Fourth Amendment, a warrantless entry which is made after consent is given is valid despite the use of a ruse.[6]

■ This conclusion is also supported by cases which hold that knowledge of one's Fourth Amendment rights is unnecessary to effect a valid consent. Consent must be voluntary, but this does not mean that it must be made with full knowledge of the right to refuse the entry or search. *Schneckloth*, at 229-31. In this way, the voluntariness involved in giving consent is distinct from the requirements for a knowing and voluntary waiver of rights implicated in the trial process. The Court has recognized this distinction:

> Nor can it even be said that a search, as opposed to an eventual trial, is somehow "unfair" if a person consents to a search. While the Fourth and Fourteenth Amendments limit the circumstances under which the police can conduct a search, there is nothing constitutionally suspect in a person's voluntarily allowing a search. The actual conduct of a search may be precisely the same as if the police had obtained a warrant. And, unlike those constitutional guarantees that protect a defendant at trial, it cannot be said every reasonable presumption ought to be indulged against voluntary relinquishment.

*Schneckloth*, at 242-43. The lack of knowledge on the part of the person who opened the door in this case that those who entered were actually police has no bearing on whether the entry was consensual. The decision to allow strangers to enter was made absent coercion by the police and with full

---

[6]In *State v. Myers*, 102 Wn.2d 548, 689 P.2d 38 (1984), we upheld the use of a ruse to gain entry. There the issue was whether the ruse was a violation of the knock and announce rule. The ruse was used to trick the defendant into opening his door. The officers did identify themselves as police but misrepresented their intention to arrest the defendant on drug charges. To determine if the entry was valid, we examined the knock and announce rule, not some distinct law of ruse.

knowledge of the illegal activity occurring within. The consent that was given was voluntary and, therefore, the entry was valid.

## KNOCK AND ANNOUNCE

██ Hastings argues that the police violated the knock and announce rule when they executed the search warrant. RCW 10.31.040 provides:

> To make an arrest in criminal actions, the officer may break open any outer or inner door, . . . if, after notice of his [or her] office and purpose, he [or she] be refused admittance.

The remedy for a violation of the statute is suppression of the evidence seized. *State v. Coyle*, 95 Wn.2d 1, 14, 621 P.2d 1256 (1980). Here, the only evidence seized was related to the possession charge that was dismissed. Since the evidence pertinent to the convictions here was not involved, the execution of the search warrant is not at issue. Hastings' argument that the evidence prejudiced the jury in regard to the delivery charges is unconvincing. Clearly, in light of the testimony of the undercover officers, the untainted evidence offered in the delivery case was "so overwhelming that it necessarily leads to a finding of guilt." *State v. Guloy*, 104 Wn.2d 412, 426, 705 P.2d 1182 (1985), *cert. denied*, 475 U.S. 1020 (1986). Thus, any error was harmless beyond a reasonable doubt.

██ Hastings also argues that the undercover officers' in-court identification should be suppressed, because it was based in part on the examination of photographs taken at the scene of the arrest. Relying again on the knock and announce rule, Hastings claims that the identifications were tainted by the fruit of an illegal search. We are not persuaded. The in-court identification had an independent basis due to the officers' interaction with Hastings when they bought the drugs. Thus, the identification is admissible, regardless of whether the warrant was executed properly. *See State v. Mathe*, 102 Wn.2d 537, 546-47, 688 P.2d 859 (1984).

We affirm the Court of Appeals and hold that there is no constitutionally protected privacy interest in a home where illegal business is openly conducted subject to certain limitations. In the alternative, we hold that the warrantless entry was permissible because it followed the occupants' consent.

The Court of Appeals is affirmed.

DORE, C.J., and BRACHTENBACH, ANDERSEN, and GUY, JJ., concur.

UTTER, J. (concurring) — The conclusion reached by the majority is correct. Although this case was briefed and argued as a ruse case, there was in fact no ruse, as revealed by the facts of this case.[7] Here the police truthfully said they were there to purchase cocaine. This should narrowly focus the inquiry on whether the police conduct was a search and, as such, a reasonable warrantless entry. *See Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989).

Instead, the majority unnecessarily discusses rules governing ruse cases in what is purely nonbinding dicta. It also erroneously discusses and unnecessarily confuses what

---

[7]Common sense and legal precedent indicate that a ruse exists where law enforcement agents profess an innocent, legal intention in order to be invited into the interior of a dwelling or the like so they can observe the interior. *See State v. Nedergard*, 51 Wn. App. 304, 310-11, 753 P.2d 526 (officers posed as potential home buyers interested in purchasing the house), *review denied*, 111 Wn.2d 1007 (1988); *State v. Hashman*, 46 Wn. App. 211, 729 P.2d 651 (1986) (officer posed as a contractor sent by the landlord to make minor renovations), *review denied*, 108 Wn.2d 1021 (1987); *see also People v. Catania*, 140 Mich. App. 755, 366 N.W.2d 38 (1985) (police agent posed as a motorist experiencing car trouble who needed to make a phone call); *Guidry v. State*, 671 P.2d 1277 (Alaska 1983) (state fish and wildlife officers posed as interested buyers of the premises); *People v. Taormina*, 130 Mich. App. 73, 343 N.W.2d 236 (1983) (officer posed as a potential buyer of a wood stove); *State v. Ahart*, 324 N.W.2d 317 (Iowa 1982) (officers posed as employees with a broken down car who needed to call their boss).

is protected from search and seizure once entry into a home is gained, thereby endangering action taken by law enforcement officers in reliance on its language and reasoning, contrary to current holdings by the United States Supreme Court. *See United States v. Knotts,* 460 U.S. 276, 285, 75 L. Ed. 2d 55, 103 S. Ct. 1081 (1983); *Rakas v. Illinois,* 439 U.S. 128, 143, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978); *Lo-Ji Sales, Inc. v. New York,* 442 U.S. 319, 329, 60 L. Ed. 2d 920, 99 S. Ct. 2319 (1979); *Lewis v. United States,* 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966).

## I

The "essential purpose of the . . . Fourth Amendment" is to impose a standard of reasonableness on the exercise of discretion by government officials in order to safeguard privacy from arbitrary invasion. *Delaware v. Prouse,* 440 U.S. 648, 653, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979). A warrantless entry into the home is presumed to be unreasonable, subject to a limited number of exceptions. *Welsh v. Wisconsin,* 466 U.S. 740, 749-50, 80 L. Ed. 2d 732, 104 S. Ct. 2091 (1984); *Payton v. New York,* 445 U.S. 573, 586, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980); *Seattle v. Altschuler,* 53 Wn. App. 317, 319-20, 766 P.2d 518 (1989).[8] While the "Fourth Amendment generally prohibits the warrantless entry of a person's home," this prohibition does not apply where the police obtain voluntary consent, either from the individual whose property is searched, or from a third person who possesses common authority over the premises. *Illinois v. Rodriguez,* 497 U.S. 177, 181, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990).

While the majority examines the warrantless entry as a consent search, its analysis fails to take account of all the

---

[8]The presumption that warrantless entry into the home is unreasonable is premised on the firm conviction that governmental intrusion, physical or electronic, into the home violates a person's constitutionally protected reasonable expectation of privacy. *See Katz v. United States,* 389 U.S. 347, 360, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring); *Weeks v. United States,* 232 U.S. 383, 58 L. Ed. 652, 34 S. Ct. 341 (1914). Nevertheless, "What a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. at 351.

relevant facts surrounding the undercover officers' November 5 entry into the Barbara Estill residence and fails to fully explore the question whether the consent to enter was valid. This oversight renders the analysis in this case constitutionally defective under current Fourth Amendment doctrine. *See Illinois v. Rodriguez, supra.*

A consent to search is not valid unless the person consenting to the search has authority to consent. *Illinois v. Rodriguez*, 497 U.S. at 181; *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989). Under the Fourth Amendment, the police may reasonably rely on the apparent authority of the person consenting to the entry. *Illinois v. Rodriguez, supra; but see State v. Leach, supra.* Petitioner did not admit the undercover officers,[9] and the record does not disclose the status of the person who let the undercover officers enter. Thus, an issue arises whether the man at the door actually or apparently possessed "common authority" over the premises.

In *United States v. Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974) the Supreme Court articulated a definition of "common authority":

> Common authority . . . rests . . . on mutual use of the property by persons generally having joint access or control for most purposes . . ..

*United States v. Matlock, supra* at 171 n.7. "The burden of establishing that common authority rests upon the State." *Illinois v. Rodriguez*, 497 U.S. at 181. The ultimate standard for the common authority rule is objective reasonableness: " '. . . would the facts available to the officer at the moment . . . "warrant a man of reasonable caution in the belief " ' ". *Illinois v. Rodriguez*, 497 U.S. at 188. While there is some doubt whether the man at the door actually or apparently possessed "common authority" over the premises, the under-

---

[9]The majority omits any reference to the fact that the petitioner did not personally admit the undercover officers into the home. Both the affidavit of proximate cause for the November 5 search warrant and the undercover officers' in-court testimony unequivocally indicate that someone other than the petitioner or Ms. Estill admitted the undercover officers inside the home.

lying principle of the Fourth Amendment "common authority" rule is reasonableness:

> "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."

*Illinois v. Rodriguez*, 110 S. Ct. at 2800 (quoting *Brinegar v. United States*, 338 U.S. 160, 176, 93 L. Ed. 1879, 69 S. Ct. 1302 (1949)). If, under the circumstances as then known, it was reasonable for the undercover officers to believe that the person who admitted them to the living room had the authority to do so, the search is valid. *Illinois v. Rodriguez*, 497 U.S. at 188-89.

The Supreme Court has sanctioned the use of undercover tactics similar to the one used by the police in this case. *See Maryland v. Macon*, 472 U.S. 463, 86 L. Ed. 2d 370, 105 S. Ct. 2778 (1985); *Lewis v. United States*, 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966). This is one factor that enters into the analysis of the reasonableness of the undercover officers' reliance on the doorman's authority to admit them inside. Necessity grounds the use of undercover tactics: police could not effectively investigate certain forms of crime if in every circumstance they always had to reveal their official identity. This case presents a type of criminal activity effectively investigated with undercover tactics.

Because people who regularly sell drugs out of a home tend to restrict strangers' access to the illegal activity that occurs inside, it is reasonable that a person stationed at the door of such an alleged house has the authority to admit or refuse persons entry. Under the circumstances presented in this case, it would be unreasonable to say that the person at the door did not have the authority to admit the undercover officers. The function of the doorman at a drug house is to restrict entry to those persons who want to purchase drugs. It is reasonable to rely on their authority to select persons for admittance.

Here, the undercover officers could reasonably rely on the authority of the man in the gray and red sweat suit to

admit them into the house to purchase drugs. The warrant-
less entry in this case is therefore legal inasmuch as the
undercover officers received a voluntary consent which
under the circumstances reasonably appeared valid.

## II

The majority's two alternative holdings appear to provide
two different and seemingly equally valid answers to the
same question: was there a violation of the Fourth Amend-
ment? However, in its first alternative holding, the majority
claims that the Fourth Amendment does not apply here; in
its second alternative holding, the majority claims that the
warrantless entry was reasonable. In light of the Fourth
Amendment analytic framework expressed in *Illinois v.
Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 110 S. Ct.
2793 (1990), these two alternative holdings are answers to
two different questions. The majority has collapsed these
two different questions into one. This move will needlessly
confuse, not clarify, Fourth Amendment doctrine for the
trial courts of this state.[10]

The cornerstone of the majority's first alternative holding
is its misreading of *Lewis v. United States, supra*. The key
language in *Lewis* is found in the following passage:

> [W]hen, as here, the *home* is converted into a commercial
> center to which outsiders are invited for purposes of transact-
> ing unlawful business, that *business* is entitled to no greater

---

[10]To illustrate the confusion, the majority asserts that "the scope of any
search must be limited to the 'commercial' vicinity [of the home]" even though
the majority holds the petitioner "abandoned" his expectation of privacy in the
premises. Majority opinion, at 232 n.1. The majority is unaware it takes two
inconsistent positions. It cannot simultaneously claim that no "search" within
the meaning of the Fourth Amendment occurred and that the scope of any
search must be reasonable (*i.e.*, limited to the "commercial" vicinity of the
premises). The latter requirement is, of course, premised on conclusion that the
Fourth Amendment applies to the government conduct in question.

However, the majority expressly rejects this conclusion: "Where there is no
expectation of privacy, the Fourth Amendment is not implicated." Majority opin-
ion, at 233. If the Fourth Amendment does not apply to the police conduct, there
is no legal basis for imposing any sort of limitation on the scope of the police
activity inside the home. If there is no "search", then there is no constitutional
basis for imposing any sort of reasonableness requirement on the scope of the
police action inside the home.

sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant.

(Italics mine.) *Lewis v. United States*, 385 U.S. 206, 211, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966). In the passage from *Lewis* quoted above, the Supreme Court spoke of "business" that has no reasonable expectation of privacy when it is openly conducted before outsiders invited into the home. *Lewis*, at 211. The *Lewis* Court used the word "business" to refer to acts and conduct, not a "place of business" or some physical structure. *Rakas* provides cogent support for this conclusion. *See Rakas v. Illinois*, 439 U.S. 128, 143 n.12, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978).[11] However, the majority reads the word "business" as "place of business" and misreads *Lewis*. It loses sight of what *Lewis* and *Rakas* say is exposed to the public: the illegal transaction itself and the immediate area where it occurred.

Given the Fourth Amendment expressly protects "houses" and "persons" from "unreasonable searches and seizures", no amount of interpretative gymnastics applied to *Lewis* can hide the analytic error of the majority's first alternative holding. The majority forgets "the Fourth Amendment has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590, 586, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980) (quoting *Johnson v. United States*, 333 U.S. 10, 92 L. Ed. 436, 68 S. Ct. 367 (1948)).[12] The majority relies on *Lewis* for its conclusion that no search occurred:

---

[11]"[A] property interest in [the] premises may not be sufficient to establish a legitimate expectation of privacy with respect to . . . *activity conducted thereon.*" (Italics ours.) *Rakas*, at 143 n.12 (citing *Lewis v. United States, supra; Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring)).

[12]Also curious is the majority's reliance on Justice Brennan's *Lewis* concurrence. Majority opinion, at 232. By relying on Justice Brennan's *Lewis* concurrence to support its first alternative holding, the majority suggests that Hastings "waived" the Fourth Amendment. The majority's reliance on Justice

There is no reasonable expectation of privacy in a home where illegal business is openly conducted and, therefore, it is not entitled to Fourth Amendment protection.

Majority opinion, at 232. Under the Fourth Amendment, obtaining evidence is a "search" if it infringes an expectation of privacy society is prepared to recognize as reasonable. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616, 103 L. Ed. 2d 639, 109 S. Ct. 1402 (1989); *Maryland v. Macon*, 472 U.S. 463, 469, 86 L. Ed. 2d 370, 105 S. Ct. 2778 (1985). A "search" is needed to trigger the protections of the Fourth Amendment. *See Maryland v. Macon, supra* at 468. These protections are twofold:

What [a criminal defendant] is assured by the trial right of the exclusionary rule, *where it applies*, is that no evidence seized in violation of the Fourth Amendment will be introduced at his trial unless he consents. What he is assured by the Fourth Amendment itself, however, is not that no government search of his house will occur unless he consents; but that no such search will occur that is "unreasonable."

(Citation omitted. Italics mine.) *Illinois v. Rodriguez*, 497 U.S. at 183.

The Supreme Court decisions have more narrowly confined their expectation of privacy analysis than the majority. In *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 60 L. Ed. 2d 920, 99 S. Ct. 2319 (1979), a case involving a bookseller convicted of selling obscene materials, the Court stated:

The suggestion is that by virtue of its display of the items at issue to the general public in areas of its store open to them, petitioner had no legitimate expectation of privacy against governmental intrusion, see *Rakas* v. *Illinois*, 439 U. S. 128[, 58 L. Ed. 2d 387, 99 S. Ct. 421] (1978) . . .. But there is no basis for the notion that because a retail store invites the public to enter, it consents to wholesale searches and seizures that do not conform to Fourth Amendment guarantees. See

---

Brennan's concurrence aligns the majority's analysis with a Fourth Amendment analytic framework at odds with the approach described in *Illinois v. Rodriguez, supra*. While a person may consent to a search and thus render such a search "reasonable", a defendant may not "waive" the Fourth Amendment. However, a defendant may waive the benefit of the exclusionary rule after the determination that such alleged waiver was knowingly and intelligently made. *Illinois v. Rodriguez*, 497 U.S. at 183.

*Lewis* v. *United States*, 385 U. S. 206, 211[, 17 L. Ed. 2d 312, 87 S. Ct. 424, 427] (1966).

*Lo-Ji Sales*, at 329. The language used in *Lo-Ji Sales* is clear: an invitation to enter commercial premises does not trump the protections of the Fourth Amendment. Thus, even when the premises are commercial rather than residential in nature, the protections of the Fourth Amendment do not evaporate; any search must still be reasonable. *See Lo-Ji Sales*.

By claiming there was no reasonable expectation of privacy in the premises, the majority's first alternative holding rests on the legal conclusion that no search occurred. *See Skinner*. The conclusion that the undercover police were not searching for evidence of suspected crimes flies in the face of common sense and the facts of this case. The police had received numerous complaints about alleged illegal drug activity occurring at the residence. The undercover officers even waited outside the residence for approximately an hour, observing many people enter, before trying to gain entry.

The police conduct in this case was much more intrusive than radio monitoring or aerial surveillance of a person driving to a destination. *Cf. United States v. Knotts*, 460 U.S. 276, 281-82, 75 L. Ed. 2d 55, 103 S. Ct. 1081 (1983). The undercover officers crossed the threshold of a home. *Cf. Payton v. New York, supra.* The undercover officers could not have made firsthand observations of the illegal activity occurring inside the home had they not crossed the threshold. *But cf. United States v. Knotts, supra* at 285 (no search occurred when a beeper was not used to reveal information about the movement of a container inside a cabin or information that would not be visible from the outside of the cabin).

In footnotes, the majority seeks to dispel concern about the effects of its holding. However, under current Fourth Amendment doctrine, a legal finding of no legitimate expectation of privacy deprives a defendant of the protections of the exclusionary rule. *See Illinois v. Rodriguez*, 497 U.S.

177, 183, 111 L. Ed. 2d 148, 110 S. Ct. 2793 (1990); *Skinner,* at 616; *Maryland v. Macon, supra* at 469. The Supreme Court views a legitimate expectation of privacy as a prerequisite to invoking the exclusionary rule. *See Rakas v. Illinois,* 439 U.S. 128, 143, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978). For reasons that are never disclosed, the majority chooses to ignore the effect of its first alternative holding: persons arrested inside a home where illegal business is transacted necessarily have no ability to seek the protection of the exclusionary rule. *But cf. United States v. Knotts, supra; Lo-Ji Sales.* Surely a person not involved at the site of illegal activity in a home must be entitled to claim at least the same level of Fourth Amendment protection as an office worker in a building or a merchant in a store.

In seeking to remove perceived (but not empirically proved or substantiated) burdens on undercover operations, the majority goes too far in restricting the scope of the Fourth Amendment. I do not dispute that the criminal conduct presented by this case and its setting in a neighborhood home present serious problems for law enforcement and society as a whole. Yet, as the Supreme Court observed of this dilemma:

> "Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also of grave concern, not only to the individual, but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." *Johnson v. United States,* 333 U. S. 10, 14 (1948), quoted with approval in *Payton v. New York,* 445 U. S. 573, 586 (1980).

*United States v. Knotts, supra* at 282.

By holding that the warrantless entry was not a search, the majority forecloses any inquiry into the constitutional requirement that all searches and seizures be reasonable. No judge, either before or after the fact, will ask the State to substantiate the warrantless entry into the home. There

will have been no determination of probable cause made by a judicial officer, nor will there be any after-the-fact examination of the reasonableness of the police conduct. The result, however, should be apparent. The majority's first alternative holding exempts this sort of police conduct from *any* judicial oversight, whether before or after entry.

The final troubling aspect of the majority opinion is its unreasoned conclusion that the warrantless entry into the home did not violate article 1, section 7 of the Washington State Constitution. See majority opinion, at 232-33. The majority takes the holding of *Lewis v. United States*, 385 U.S. 206, 17 L. Ed. 2d 312, 87 S. Ct. 424 (1966), phrases it in the language of *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) (Harlan, J., concurring), and then engrafts it onto the Washington Constitution — all in the space of three short sentences. Given the failure of the parties to provide argument based on article 1, section 7 of the Washington State Constitution, the state constitutional issue has not been adequately presented by the parties, nor has this court received sufficient argument to merit the discussion of the Washington Constitution that occurs in the majority opinion. This furtive construction of the Washington Constitution does not comply with the mandate of *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986):

> Recourse to our state constitution as an independent source for recognizing and protecting the individual rights of our citizens must spring not from pure intuition, but from a process that is at once articulable, reasonable and reasoned.

(Footnote omitted.) *State v. Gunwall, supra* at 63.

DOLLIVER, SMITH, and JOHNSON, JJ., concur with UTTER, J.